Lawrence Lee BUXTON, Petitioner–Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 91–2172.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1991.

Stanley G. Schneider, Schneider & McKinney, Houston, Tex., Robert L. McGlasson, Texas Resource Center, Austin, Tex., for petitioner-appellant.

Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before KING, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

Lawrence Lee Buxton (Buxton), currently confined on death row in the Texas Department of Criminal Justice, Institutional Division, instituted his second federal habeas corpus petition in the United States District Court for the Southern District of Texas on February 22, 1991, pursuant to 28 U.S.C. § 2254. He requested that the district court stay his execution, order an evidentiary hearing, and issue a writ of habeas corpus vacating his conviction for capital murder. He is scheduled for execution on February 26, 1991 after 12:01 a.m. On February 23, 1991, the district court denied Buxton all relief, and denied Buxton a certificate of probable cause for appeal (CPC). Buxton applies to this court for a certificate of probable cause for appeal and for a stay of execution. Because we find that there has been no substantial showing of the denial of a federal right, we deny his application for a certificate of probable cause. Furthermore, because Buxton demonstrates neither a substantial case on the merits, nor that the balance of the equities weighs in his favor, we deny his motion for a stay of execution.

## I. FACTS AND PROCEDURAL HISTORY.

As they were returning home from Yom Kippur services on the evening of September 19, 1980, the Slotnik and Sternberg families stopped at a Safeway grocery store. Mrs. Sternberg, Joel Slotnik, and his five-year-old son Aaron entered the store. Sternberg testified that a man with a stocking mask over his face yelled "Hit the deck" as they entered. She observed three masked men, two of whom were brandishing guns.

One of the masked men forced Patricia Jackson, an assistant store manager, to

give him the contents of her cash register at gun point. Mrs. Sternberg heard a robber tell Slotnik "You better get that kid down." The gunman took his aim off Patricia Jackson and aimed the gun at Slotnik, who was seated with his arm around his son. After taking aim with both hands for seven to eight seconds, the gunman shot Slotnik in the neck. Slotnik died from the wound four days later.

Two robbers exited the store, followed by the third robber. Sternberg subsequently identified the third robber as the killer. Several members of Slotnik's family were seated in a car parked in front of the store. Linda Slotnik, Joel's wife, testified that she heard a noise and looked toward the doors of the store. She observed two masked men walking rapidly, followed by a third man. The third man pulled off his mask as he left the store. Mrs. Slotnik identified Buxton in court as the man who pulled off his mask. Lee Slotnik, Joel's fourteen-year-old son, testified that he heard the sound of a shot coming from inside the store. He also identified Buxton as the third robber to leave the store.

John Larry Foster testified that he had a conversation with Buxton while he was in Houston sometime in late January or the first part of February, 1981. Buxton told him that "he went out and pulled a robbery" at a grocery store and "this guy seen him when he was coming out and he hollered for the guy to stop and he didn't so he shot." Buxton also told Foster that he used "38 slugs" because they were "hard to be traced." Buxton reportedly laughed about the incident.

A Texas state district court convicted Buxton of capital murder in the course of a robbery. After a separate punishment hearing, the jury affirmatively answered the two Texas special issues and sentenced Buxton to death. Buxton's conviction automatically was appealed to the Texas Court of Criminal Appeals, which affirmed the conviction. *Buxton v. State,* 699 S.W.2d 212 (Tex.Crim.App.1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). The United States Supreme Court denied Buxton's petition for a writ of cer-

tiorari. The trial court set Buxton's execution date for September 30, 1986. Buxton applied for a state writ of habeas corpus, which was denied.

Buxton immediately filed an application for a writ of habeas corpus in the United States District Court for the Southern District of Texas. He simultaneously filed an application for a stay of execution which was unopposed by the State and granted by the district court on September 29, 1986. Subsequently, the State moved for summary judgment on the habeas petition. The district court granted the State's summary judgment motion and vacated the stay, and denied Buxton's request for a certificate of probable cause to appeal. We granted a certificate of probable cause and heard Buxton's appeal. We denied relief on July 21, 1989. *Buxton v. Lynaugh,* 879 F.2d 140 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). Buxton's petition for a writ of certiorari to the United States Supreme Court was denied.

On October 16, 1990, Buxton filed a second application for a state writ of habeas corpus. On January 17, 1991, the State district court set Buxton's execution date for February 26, 1991. On February 8, 1991, the trial court entered findings of fact and conclusions of law and recommended to the Texas Court of Criminal Appeals denial of Buxton's application for a writ of habeas corpus. On February 20, 1991, the Texas Court of Criminal Appeals denied relief based upon those findings, and Buxton promptly sought a stay of execution in the Court of Criminal Appeals.

On February 19, 1991, Buxton filed a supplemental habeas application in the trial court and the Court of Criminal Appeals. On February 21, 1991, the trial court entered findings of fact and conclusions of law on Buxton's supplemental application for writ of habeas corpus, and again recommended that relief be denied. On February 21, 1991, the Texas Court of Criminal Appeals denied Buxton's supplemental habeas application based on the trial court's findings of fact and conclusions of law.

On February 22, 1991, Buxton instituted his second federal habeas corpus petition in the United States District Court for the Southern District of Texas. He requested that the district court stay his execution, order an evidentiary hearing, and issue a writ of habeas corpus ordering that his conviction for capital murder and his death sentence be vacated. On February 23, 1991, the district court denied relief. On February 25, 1991, Buxton applied to this court for a certificate of probable cause for appeal (CPC) and for a stay of execution.

## II. STANDARD OF REVIEW.

In deciding whether to issue a stay of execution, we are required to consider four factors:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Byrne v. Roemer*, 847 F.2d 1130, 1133 (5th Cir.1988) (quoting *Streetman v. Lynaugh*, 835 F.2d 1521, 1524 (5th Cir.1988)). Although the " 'movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in the favor of granting the stay.' " *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.), *cert. denied*, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987) (quoting *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir.1984)).

We will grant a certificate of probable cause to appeal pursuant to Fed. R.App.P. 22(b) if the applicant can make a substantial showing of the denial of a federal right. *Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971) (quoting *Harris v. Ellis*, 204 F.2d 685 (5th Cir.1953)). A "substantial showing" of a denial of a federal right means that "the issues are debatable among jurists of reason, that a court could resolve the issues [in a different manner];

or that the questions are 'adequate to deserve encouragement to proceed further.' " *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394 n. 4, 77 L.Ed.2d 1090 (1982) (quoting *Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D.Ga.1980)). The severity of the penalty in a death penalty case "is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." *Id.* at 893, 103 S.Ct. at 3395.

The Supreme Court has reasoned that although "[i]t is natural that counsel for the condemned in a capital case should lay hold of every ground which, in their judgment, might tend to the advantage of their client, ... the administration of justice ought not to be interfered with on mere pretexts." *Id.* at 888, 103 S.Ct. at 3392. (quoting *Lambert v. Barrett*, 159 U.S. 660, 662, 16 S.Ct. 135, 135, 40 L.Ed. 296 (1895)). The Court acknowledged, however, that "a death sentence cannot ... be carried out by the State while substantial legal issues remain outstanding" and the courts should not "fail to give non-frivolous claims of constitutional error the attention they deserve." *Id.* at 888, 103 S.Ct. at 3392. Consistent with the Court's admonition, we have warned that any doubts whether CPC should be issued are to be resolved in favor of the petitioner. *Jones v. Warden, La. State Penitentiary*, 402 F.2d 776 (5th Cir. 1968).

We now proceed to consider the issues Buxton raised in his second federal habeas petition in order to determine whether substantial questions remain concerning Buxton's conviction.

## III. ANALYSIS.

Buxton raised the following issues in his federal habeas petition:

(1) The trial court violated his Sixth, Eighth, and Fourteenth Amendment rights because the jury was unable to give mitigating effect to the possibility that Buxton was not the triggerman in Joel Slotnik's murder;

(2) The Texas death sentencing scheme prevented Buxton's attorney from investigating and presenting mitigating evidence concerning Buxton's deprived childhood and abusive father in violation of Buxton's Sixth, Eighth, and Fourteenth Amendment rights;

(3) Buxton received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because trial counsel failed to object to improper hypotheticals during jury selection, improper jury arguments, and an improper jury charge;

(4) Buxton was denied due process of law under the Fourteenth Amendment because the jury charge authorized conviction under a theory not amounting to capital murder;

(5) Buxton received ineffective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights because appellate counsel did not argue that the jury charge was fundamentally defective;

(6) Buxton was denied due process of law under the Fourteenth Amendment because a state "fundamental error" doctrine relating to jury charges was not applied to Buxton on appeal;

(7) Buxton was subjected to an *ex post facto* law because of the application of an "egregious harm" standard of review relating to jury charges rather than a "fundamental error" standard.

The State concedes that Buxton exhausted his state court remedies.

*A. Did The Trial Court Violate Buxton's Sixth, Eighth, And Fourteenth Amendment Rights Because The Jury Was Unable To Give Mitigating Effect To The Possibility That Buxton Was Not The Triggerman In Joel Slotnik's Murder?*

At trial, Buxton contended that the identification evidence was inconclusive and that he was not the person who committed the murder. Although the jury's guilty verdict at the guilt-innocence phase indicated that they believed that Buxton was present at the scene of the crime, Buxton argues that the jury could have found him guilty although they did not believe that he pulled the trigger because the trial court provided a law of parties instruction. Buxton argues that the jury may also have believed that he deserved a sentence of less than death because he did not pull the trigger but felt constrained to answer the deliberateness prong of the Texas special issues in the affirmative because of the law of parties instruction at the guilt phase.

At the sentencing phase of his capital trial, the court submitted the following issues to the jury pursuant to Tex.Code Crim.P. art. 37.071(b):

SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, Lawrence Lee Buxton, that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

SPECIAL ISSUE NO. 2

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Lawrence Lee Buxton, would commit criminal acts of violence that would constitute a continuing threat to society?

Buxton contends that a jury could have felt constrained to answer the first special issue in the affirmative because they believed that he acted deliberately in participating in the robbery and with the reasonable expectation that the death of another would occur. He claims that under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), his conviction was constitutionally infirm because the jury had no vehicle by which to give effect to a belief that he deserved a sentence less than death because he was not the triggerman.

█ Both the Texas Court of Criminal Appeals and the district court found Buxton's claim to be procedurally barred because his trial attorneys failed to object to the absence of an "anti-parties" charge at punishment phase of the trial and failed to

request that such a charge be given. In its findings of fact and conclusions of law, on which the Court of Criminal Appeals based its order denying his application for a writ of habeas corpus, the state trial court noted that Buxton's trial attorneys:

failed to object to the Texas death penalty scheme on the basis that the jury was precluded from considering evidence, i.e. that the applicant was allegedly a non-triggerman, which allegedly counseled in favor of a sentence less than death. As a result, the applicant is procedurally barred from complaining that the Texas death penalty scheme unconstitutionally precluded the jury from considering as mitigating evidence his alleged status as a non-triggerman.

The district court agreed that Buxton's claims were procedurally barred, although both courts also considered the merits of Buxton's claims as an alternative ground for their rulings.

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court concluded that, absent a showing of cause and prejudice, we may not reach the merits of a habeas corpus petitioner's challenge to a state court conviction if that conviction rests on a state-law procedural ground that is both "independent" of the federal claim's merits and an "adequate basis for the court's decision." Under Texas law, if a defendant does not properly preserve error at the trial court level by timely objecting to the error or omission, the defendant waives his right to raise the point on direct appeal and in post-conviction applications for a writ of habeas corpus. *Ex parte Dutchover*, 779 S.W.2d 76 (Tex.Cr.App.1989).

A federal habeas court, however, cannot refuse to consider the merits of a petitioner's claim on the basis of a state procedural default unless the last court rendering a judgment in the case clearly relied on that procedural default to deny relief. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). The Texas Court of Criminal Appeals based its order denying Buxton's application for a writ of habeas corpus on the state trial court's findings of fact and conclusions of law. Although the state trial court also considered and rejected Buxton's claim on the merits, it stated clearly that its consideration of the merits of Buxton's claim was strictly in the alternative. The Supreme Court in *Harris* noted that

a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 (emphasis in original) (citation omitted). In these circumstances, the state procedural bar was an adequate and independent state law ground, and the Supreme Court's decision in *Sykes* requires that we review Buxton's claim only if Buxton can demonstrate cause and prejudice for his failure to comply with the procedural rule.

Addressing this requirement, Buxton observes that the application of Texas default law to *Penry* claims is, and will continue to be, unsettled until the Court of Criminal Appeals answers the certified question in *Selvage v. Collins*, 897 F.2d 745 (5th Cir. 1990). In *Selvage*, we asked the Texas Court of Criminal Appeals to rule on the question whether Selvage's failure to object to the jury charge or request special instructions at the punishment phase of his trial barred him under Texas law from asserting that the Texas death sentencing

statute prevented the jury's consideration of his mitigating evidence. *Id.*

The Texas Court of Criminal Appeals has not yet answered the certified question in *Selvage.* Nevertheless, in the instant case the Texas Court of Criminal Appeals, in adopting the trial court's findings of fact and conclusions of law, has stated clearly that Buxton's failure to request an anti-parties charge at the punishment phase and failure to object to the Texas death penalty scheme on the basis that it precluded the jury from considering evidence that Buxton was allegedly a non-triggerman, which allegedly counseled in favor of a sentence less than death, prevent review of Buxton's claim that the jury could not give mitigating effect to the possibility that he was not the triggerman. Furthermore, Buxton's triggerman argument is factually distinguishable from *Selvage* and will not be controlled by the Texas Court of Criminal Appeals answer to the certified question in *Selvage.*

In *Selvage,* we asked the Texas Court of Criminal Appeals to decide whether Texas would find a claim that the jury was unable to give mitigating effect to the defendant's evidence procedurally barred because the defendant failed to request a special instruction on mitigation or to object to the jury's charge. In the instant case, however, Buxton did not have to anticipate the Supreme Court's decision in *Penry* in order to realize that an anti-parties charge or an objection to the failure to give such a charge was appropriate. Any confusion that may have arisen at the sentencing phase as a result of the trial court's law of parties instruction at the guilt phase should have been apparent to Buxton's attorney at trial and did not depend on the Supreme Court's decision in *Penry.* If Buxton believed that the jury could not give effect to the possibility that he was not the triggerman under either the deliberateness or the future dangerousness prong of the Texas special issues, he should have objected on that ground at trial and his failure to do so procedurally bars our consideration of his claim at this late date.

*B. Did The Texas Death Sentencing Scheme Prevent Buxton's Attorneys From Investigating And Presenting Mitigating Evidence Concerning Buxton's Deprived Childhood And Abusive Father In Violation Of Buxton's Sixth, Eighth, And Fourteenth Amendment Rights?*

■ Buxton argues that his trial counsel failed to investigate and present evidence concerning his deprived childhood and abusive father because the Texas special issues, as interpreted before the Supreme Court's decision in *Penry,* did not permit the jury to give mitigating effect to such evidence, and increased the possibility that the jury would return an affirmative answer to the continuing dangerousness prong of the Texas special issues. In its findings of fact and conclusions of law, the state trial court found:

12. The applicant made no objection to the Texas death penalty scheme on the basis of its alleged chilling effect on counsels' investigation and presentation of mitigating evidence. The applicant also submit [sic] any request instruction concerning mitigation and the Texas death penalty scheme.

13. Counsel were aware that the applicant came from a poor family and had a limited education. Further, counsel were aware of the alleged limitations of the Texas death penalty scheme and its impact on their investigation and presentation of evidence. Counsel made a tactical decision to neither develop nor present evidence of applicant's background and education at the applicant's 1983 trial.

In its conclusions of law, the trial court found:

5. As a result of the applicant's failure to object to the alleged chilling effect of the Texas death penalty scheme or to submit any requested instruction concerning mitigation and the death penalty scheme, the applicant is procedurally barred from advancing his claim that counsels' reliance on the Court of Criminal Appeals' consistent

interpretation of the Texas death penalty scheme prevented counsel from investigating, developing and presented [sic] allegedly relevant mitigating evidence in support of a life sentence. Moreover, any alleged futility perceived by trial counsel does not obviate his duty to preserve his complainant [sic] for later state and federal habeas review if he perceived that the Texas death penalty scheme was unconstitutional as applied to him.

The trial court also noted that:

9. There is no evidence to support the applicant's claim that counsel felt precluded from investigating and presenting the applicant's background, in light of the fact that lead trial counsel, John Emmett Crow, did investigate, develop and present mitigating background evidence in the 1979 [capital murder] trial of John Henry Selvage, four years prior to the applicant's trial.

The trial court reached and rejected the merits of Buxton's claim, but strictly as an alternative holding.

Whatever the Texas Court of Criminal Appeals' final answer to the certified question in *Selvage*, that court, in adopting the trial court's findings and conclusion set forth above, clearly has found Buxton's "chilling effect" argument procedurally barred. Furthermore, the state court's findings of fact indicate that Buxton cannot demonstrate cause for his failure to object to the Texas death penalty scheme because "counsel were aware of the alleged limitations of the Texas death penalty scheme and its impact on their investigation and presentation of evidence."

Buxton notes, however, that in two recent cases in which the petitioner raised a *Penry* claim that the State contends was procedurally barred, we granted the applicant a stay pending the Texas Court of Criminal Appeals' answer to our certified question in *Selvage*. *See Fierro v. Collins,* No. 90–8336 (5th Cir. June 13, 1990) (successor petition) (refusing to vacate stay pending resolution of procedural bar ques-

tion certified to Texas court in *Selvage*); *Harris v. Collins,* unpublished order No. 90–6022 (5th Cir. December 18, 1990) (granting stay and certificate of probable cause and holding *Penry* claim pending resolution of *Selvage* question). In both cases, however, the finding of a procedural bar predated our certified question in *Selvage* and some doubt existed whether the Texas Court of Criminal Appeals would find the applicant's claim procedurally barred post-*Selvage*. In the instant case, however, the Texas Court of Criminal Appeals has stated clearly that a procedural bar prevents Buxton's claim.

Furthermore, unlike the petitioners in *Selvage, Fierro,* and *Harris,* Buxton argues not that the jury was unable to give mitigating effect to the evidence that he presented—he presented none—but that he was chilled from ever pursuing such evidence. Whether Texas considers such a "chilling effect" argument procedurally barred will not be answered in *Selvage.* In *Selvage,* we asked the Texas Court of Criminal Appeals to decide whether Texas requires a contemporaneous objection when a defendant argues that the jury, prior to *Penry,* was unable to give effect to mitigating evidence under the Texas special issues. In each of *Selvage, Fierro,* and *Harris,* the defendant arguably had no reason to suspect that the Texas death sentencing scheme was constitutionally infirm absent an instruction allowing the jury to give mitigating weight to evidence concerning the defendant's background or character. However, according to Buxton's trial counsel's affidavit, submitted to the Texas trial court in connection with his last state habeas petition, the constraints placed upon the investigation and presentation of mitigating evidence occasioned by the Texas special issues *were* apparent to Buxton's counsel prior to the Supreme Court's decision in *Penry.* Because the Texas Court of Criminal Appeals clearly answered the procedural bar question in the instant case, and because Buxton's chilling effect argument will not be controlled by the Texas Court of Criminal Appeals' answer to the certified question in *Selvage,* neither logic nor precedent constrains us to await the

**824**

Texas Court of Criminal Appeals' answer to the certified question in *Selvage.*

### C. Did Buxton Receive Ineffective Assistance Of Trial Counsel In Violation Of His Sixth And Fourteenth Amendment Rights?

Buxton argues that his trial counsel were ineffective because they did not object to the State's use of certain hypotheticals during voir dire, failed to object to a statement made by the prosecutor during closing argument, and failed to object to a jury charge that Buxton argues allowed the jury to convict him in circumstances that do not constitute capital murder under Texas law. Buxton argues that his trial counsel lacked familiarity "with the most basic law—the elements of the offense for which his client faced the ultimate punishment," and as a result, the jury may have convicted him on facts that amounted to non-capital murder.

We review claims of ineffective assistance of counsel under the two-prong standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet this standard, a criminal defendant must demonstrate:

> First … that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. In reviewing such claims "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and a defendant must overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Id.*

■ To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. When a defendant challenges the death sentence, the question is "whether there is a reasonable probability that, absent the errors, the sentencer—including the appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. at 2069.

■ It is not sufficient that the habeas petitioner merely allege a deficiency on the part of counsel; he must affirmatively plead prejudice in his petition. *Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1986). Absent such a pleading, a habeas petitioner is not entitled to a federal evidentiary hearing on his claim. *Id.* The claim may be disposed of for either reasonable performance of counsel or lack of prejudice, and if one is found dispositive, it is not necessary that the court address the other.

#### 1. The jury charge

■ At the guilt-innocence phase of the trial, the trial court charged the jury that:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> Now, if you find from the evidence beyond a reasonable doubt that on or about September 19, 1980, in Harris County, Texas, the defendant, Lawrence Lee Buxton, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Patricia Jackson, intentionally cause the death of Joel Slotnik, by shooting Joel Slotnik with a gun, then you will find the defendant guilty of capital murder.

Buxton's attorneys did not object to this charge, the first section of which tracked verbatim the definition of "intentionally" found in § 6.03(a) of the Texas Penal Code Ann. (Vernon 1974).

The Texas statute states that a person commits a murder if that person "intentionally or knowingly causes the death of an individual;" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;" or in the course of committing or attempting to commit a felony or in the flight from it, he commits a dangerous act that results in death. Tex. Pen.Code Ann. § 19.02(a)(1), (2) & (3). A murder becomes a capital murder if the defendant caused the death "intentionally or knowingly" and if the defendant committed the murder in one of six situations, including a murder committed in the course of a robbery.

Buxton observes that in *Hogue v. State,* 711 S.W.2d 9, 13 (Tex.Crim.App.1986), the court held that to prove a Tex.Penal Code § 19.03(a)(3) capital murder, the State must show both an intent to commit the underlying felony and an intent to kill the victim. The State must prove that the defendant intentionally committed the murder, and that the intentional killing occurred in the course of committing or attempting to commit one of the predicate offenses.

The jury charge in the instant case, however, was not defective under Texas law. As the state trial court found in its findings of fact and conclusions of law, the Court of Criminal Appeals in *Kinnamon v. State,* 791 S.W.2d 84 (Tex.Crim.App.1990), held that it was not error to instruct a jury in a capital murder case as to the verbatim definition of "intentionally" found in § 6.03(a) of the Texas Penal Code. Although § 6.03(a) contains the phrase "to engage in the conduct," the application portion of the charge restricts the definition of "intentionally" to its factual context. Read as a whole, therefore, the jury charge required the jury to convict Buxton not because he "engaged in the conduct" of firing a gun, but because he intended to cause Joel Slotnik's death during the course of the rob-

bery. Buxton's attorney was not ineffective for failing to object to an instruction that was not erroneous.

## 2. The prosecutor's closing argument

■ During the State's opening argument at the guilt-innocence stage of the trial, the prosecutor made the following unobjected to statements:

> That there was an intentional cause that they intention—that the Defendant intentionally caused the death of Joel Slotnik by shooting Slotnik with a gun. Well, if there was any doubt that there was an intentional act of shooting with a gun, that when there was testimony that the Defendant in this case, Lawrence Buxton, held a gun like this (indicating) for seven to eight seconds and then shot. If that's not an intentional act, I don't know what is.

This argument was not objectionable. The prosecutor's argument properly summarized the evidence and drew the reasonable inference from Buxton's careful aim that Buxton intended to cause Slotnik's death. *See Darden v. State,* 629 S.W.2d 46, 52 (Tex.Crim.App.1982) (four proper areas of jury argument are summation of evidence, reasonable inference from evidence, answers to opposing counsel's argument, and pleas for law enforcement); *see also, Flanagan v. State,* 675 S.W.2d 734, 744 (Tex.Crim.App.1984) (specific intent to kill may be inferred from the use of a deadly weapon). Furthermore, shortly after the challenged statement, the prosecutor argued to the jury:

> I think it's clear beyond any doubt whatsoever that not only was he a party to the robbery but that he knowingly and intentionally killed Joel Slotnik on that day in question.

The prosecutor would not have made this clarifying statement if he was arguing that the jury should find Buxton guilty of capital murder because he engaged in the conduct of robbing the grocery rather than because he intended to cause the death of Joel Slotnik.

### 3. The voir dire hypotheticals

■ The State asked juror Robbie Dunlap during voir dire:

Q: As far as reasonable expectation, again, I think you can see that it is also—uh—showing you that you might not have a reasonable expectation.

I'm giving you another example: Supposing in that bank the triggerman who goes in, while he pulls out his gun and deliberately asks for the money—they're not really fast enough—fires it off in the area and it ricochets off something and he strikes a person that he didn't even know was in the background and killed 'em.

You know he's deliberately pulled the gun, deliberately pulled the trigger, but when he shot in the air, he didn't have a reasonable expectation that it would ricochet just right and kill somebody in the back room. And so you see that reasonably, even though he did an intentional act, it may not be considered that he would cause the death.

Both sides accepted Dunlap as a juror.

The State asked juror Vada Kalisek during voir dire:

Now, let's take the same situation, puts everybody on the floor—puts everybody on the floor, got one teller taking the money and he says, "If you don't give me the money in three seconds, I'm gonna shoot somebody," and he really don't mean it and she's going as fast as she can but he thinks, "She can do it a little faster," so he says, "I'll scare her, get her moving," and he fires up in the air. He didn't expect it to go all the way through the ceiling but it does. But, by his misfortune, or somebody else's, it hits a steel beam and ricochets off and hits a person he's got laying on the floor and kills 'em.

\*       \*       \*       \*       \*       \*

He's guilty of capital murder but he—you might be able to answer that question no because you see that he didn't deliberately—he didn't have that reasonable expectation that death would result from that deliberate act.

Vada Kalisek was sworn in as a juror. The State used a similar hypothetical during the voir dire of juror Gerald R. Mitchell, and again used the bank robbery-ricochet hypothetical during juror Joan E. Spradlin's voir dire. These hypothetical questions provide situations in which the defendant may have been guilty of murder but not capital murder. Although the state habeas court found that the four hypotheticals of which Buxton complains were similar to those found erroneous in *Lane v. State*, 743 S.W.2d 617 (Tex.Crim.App.1987), it also noted that prior to giving those examples, the prosecutor properly described a deliberate act done by the triggerman with a reasonable expectation that a death would result during a capital murder. Thus, the jury had before it a correct explanation of what constituted deliberate conduct. Considered in light of the trial as a whole, this error does not raise the "reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068–69.

*D. Did Buxton Receive Ineffective Assistance Of Appellate Counsel, In Violation Of The Sixth And Fourteenth Amendments, Because Appellate Counsel Failed To Argue That The Jury Charge Was Fundamentally Defective?*

*E. Was Buxton Denied Due Process Of Law Under The Fourteenth Amendment Because A State "Fundamental Error" Doctrine Relating To Jury Charges Was Not Applied To Buxton On Appeal?*

*F. Was Buxton Subjected To An Ex Post Facto Law By The Application Of An "Egregious Harm" Standard Of Review Relating To Jury Charges Rather Than A "Fundamental Error" Standard?*

■ Buxton contends that he received ineffective assistance of appellate counsel because counsel did not object to the jury charge on appeal as fundamentally defective for the reason referred to in Part E above. In related arguments, he contends that he was denied due process under the Fourteenth Amendment of the United

States Constitution and due course of law under the Texas Constitution because of the erroneous jury instructions. Finally, he asserts that he was subjected to an *ex post facto* law because his appeal was examined under a standard adopted after his crime.

Because we have found that the charge complained of was not objectionable, appellate counsel cannot be faulted for failing to raise the charge as a point of error on appeal. Because these constitutional issues were not raised on appeal, the new fundamental error rule was not applied to them; and because the new rule was not applied, no *ex post facto* question exists. We conclude, therefore, that Buxton's additional claims do not demonstrate that substantial legal issues remain outstanding.

## IV. CONCLUSION.

Because we find that there has been no substantial showing of the denial of a federal right, we deny Buxton's application for a certificate of probable cause to appeal. Furthermore, because Buxton demonstrates neither a substantial case on the merits nor that the balance of the equities weighs in his favor, we deny his motion for a stay of execution.

CERTIFICATE OF PROBABLE CAUSE TO APPEAL DENIED.

STAY OF EXECUTION DENIED.