IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20553
_____


ROBERT DREW,

                                        Petitioner-Appellant,

                        versus

WAYNE SCOTT, Director,
Texas Department of Criminal Justice,
Institutional Division

                                        Respondent-Appellee.

_____

        Appeal from the United States District Court for the
                    Southern District of Texas

_____


                        (August 2, 1994)

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        More than eleven years ago Robert Drew viciously and
sadistically beat and stabbed Jeffrey Mays to death on February 21,
1983.  Jeffrey was a teenage boy from Alabama who had run away from
home with his high school friend, Bee Landrum.  The boys picked up
John Sly, and later they picked up Robert Drew and Ernest
Puralewski.  The group drove toward Houston, Texas.  Suddenly,
violence erupted when Jeffrey decided that he wanted to turn the
car around and go home.  Drew then threatened to cut Sly's throat,

but instead, he robbed Sly, forced Sly out of the car, and abandoned him on the road. Drew then forced Jeffrey into the back seat. Drew savagely beat Jeffrey, spattering Jeffrey's blood on the door, the back seat, and on Drew's prized leather jacket. Drew's hands were covered in Jeffrey's blood. Drew licked Jeffrey's blood off of his hands and declared that Jeffrey must die because "nobody gets blood on me for nothing . . . ." They stopped the car, and then Drew and Puralewski pulled Jeffrey outside. Ignoring Jeffrey's pleas for life, Drew and Puralewski repeatedly plunged their knives into Jeffrey; gouging his chest; puncturing his lung; piercing his heart. Drew snatched Jeffrey's head back and slit his throat. Jeffrey's last breath hissed out of the gash in his lung. Drew and Puralewski threw Jeffrey's butchered corpse in a roadside ditch. As Drew, Puralewski, and Landrum drove off in the car, Drew boasted, "I f___ing enjoyed it because it got blood on my leather."[1]

## II

In December 1983, a Texas jury convicted Drew of capital murder and sentenced him to death. In September 1987, the Texas Court of Criminal Appeals affirmed Drew's conviction and sentence. Drew v. State, 743 S.W. 2d 207, 214 (Tex. Crim. App. 1987).

---

[1]The trio went to a truck stop where a cashier noticed that Drew was covered in blood. After leaving Puralewski at a bar in Houston later that evening, Drew and Landrum were stopped for speeding. Drew's arrest for capital murder followed.

Drew first filed for habeas relief in 1988.  The Texas courts denied relief.  The federal district court denied relief.  Drew asserted a plethora of claims to this court--including a factual innocence claim that was rejected based on the wealth of incriminating testimonial and forensic evidence.  After thoroughly addressing each of Drew's claims, we held that every one failed on the merits.  <u>Drew v. Collins</u>, 964 F.2d 411 (5th Cir. 1992).  The Supreme Court denied Drew's petition for certiorari.[2]  <u>Drew v. Collins</u>, ___ U.S. ___, 113 S.Ct. 3044, 125 L.Ed.2d 730 (1993).

Drew filed his second round of habeas petitions in 1993.  The Texas courts denied relief for the second time.  The federal district court denied relief for the second time.  Before this court, Drew sought to escape execution on the basis that the state trial judge's method of signing court documents, including drawing a "smiling face" beneath his signature, insulted Drew's constitutional rights.  We denied Drew a certificate of probable cause ("CPC") because Drew could have raised that claim in his first habeas proceeding and, thus, abused the writ under Rule 9(b)

---

[2]Drew also sought clemency from the Board of Pardons and Paroles, and from the Governor of Texas on September 16, 1993. The Board, in a 15-0 vote, denied Drew's request.  Further, Drew filed a civil suit seeking to force the Board to hold a hearing in 1993.  The Texas trial court denied relief, but the Texas Court of Appeals enjoined Drew's scheduled October 14, 1993 execution.  On June 15, 1994, the Texas Court of Criminal appeals held that the Texas Court of Appeals was without jurisdiction and ordered that court to vacate its injunction.

of the Rules Governing Section 2254 Cases. Drew v. Collins, 5 F.3d 93 (5th Cir. 1993). The Supreme Court denied certiorari. Drew v. Collins, ___ U.S. ___, 114 S.Ct. 1207, 127 L.Ed.2d 555 (1994).

Ever persistent, Drew has filed this third round of habeas petitions in 1994. Again, the Texas courts denied habeas relief. Again, the federal district court denied relief. Again, Drew appeals to this court.

### III

In his third trip to this court, Drew once again asserts that he is factually innocent despite his failure on this very claim on his first visit to our court. This claim is unpersuasive and insufficient to survive our standard of review for the grant of CPC or a stay of execution.

We have no jurisdiction to address the merits of Drew's appeal from the district court's denial of habeas relief unless we grant CPC. Black v. Collins, 962 F.2d 394, 398 (5th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992). To obtain CPC, Drew must make a substantial showing that he has been denied a federal right. Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983); Drew, 5 F.3d at 95. Similarly, we will grant Drew a stay of execution only if he shows that there are "substantial grounds upon which relief might be granted." Delo v. Stokes, 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) (quoting Barefoot, 463 U.S. at 895, 103 S.Ct. at 3395); Drew, 5 F.3d at 95. Drew's right to assert a federal habeas claim

is limited by Rule 9(b), which provides for dismissal of previously raised habeas claims as constituting an abuse of the writ. We will assume that Drew may avoid dismissal of his successive claim, however, if he makes a proper showing of factual innocence. Herrera v. Collins, ___ U.S. ___, ___, 113 S.Ct. 853, 862, 122 L.Ed.2d. 203 (1993). Drew's reassertion of his stale factual innocence claim fails to persuade us that his conviction or his sentence was in any way constitutionally defective.

Once more, Drew attacks his conviction based on asserted inconsistencies in Landrum's statements regarding his view of Drew and Puralewski's murder of Jeffrey. Once more, Drew assaults the unanimous jury verdict based on his codefendant's, Puralewski's, postsentencing affidavit that he acted alone in murdering Jeffrey. Once more, Drew offers the affidavits of prisoners who claim that they heard Puralewski state that he alone murdered Jeffrey. This time, Drew offers as "new evidence" the recently obtained statement of a third prisoner. Drew asserts that this prisoner heard Puralewski take sole credit for Jeffrey's murder before he pled guilty to that murder.[3] Drew contends that the Texas rule requiring new trial motions to be made within thirty days of the imposition of sentence has deprived him of his Eighth and

---

[3]Alan Burns gave the most recent affidavit. We note that no satisfactory reason for the belated timing of this "newly discovered" evidence has been offered. Further, the affidavit is unclear as to whether Burns allegedly heard Puralewski's statement before Puralewski was convicted and sentenced.

Fourteenth Amendment rights.  Tex. Code Crim. Proc. Ann. art. 40.05 (Vernon 1981) (repealed effective September 1, 1986).  In effect, ten years after his trial and after a multitude of state and federal habeas proceedings, Drew requests a new hearing to redetermine his guilt.

The Texas district court has once again fully reviewed all the affidavits and trial evidence, has made findings of fact, and has concluded that Drew's proffered affidavits are not credible and do not undermine the verdict or sentence.[4]  We continue to agree.  First, Landrum's basic account of the facts remains unshaken.  He consistently maintains that his testimony at trial was true and that Drew murdered Jeffrey.[5]  Drew, 964 F.2d at 411.

Second, we still have little confidence in Puralewski's postsentencing truth experience because he had nothing whatsoever

---

[4]In appropriate circumstances, state courts may resolve issues of fact based on affidavits instead of holding a "live evidentiary hearing."  May v. Collins, 955 F.2d 299, 314-15 (5th Cir. 1992).  We hold that the state court's findings in this case are entitled to a presumption of correctness.  Id.

[5]At trial, Landrum demonstrated how Drew slit Jeffrey's throat and testified, "They [, Drew and Puralewski,] stabbed him."  He also testified that he saw Drew and Puralewski's arms making stabbing motions over Jeffrey's body.  In 1988, Landrum gave a sworn statement in which he averred that "All statements I have given oral, written, or recorded about the death of Jeffrey Mays are true."  In 1993, Landrum gave another sworn statement in which he averred, "I didn't turn around but I could see through the rear view mirror and . . . I knew they were stabbing Jeff."

We denied Drew's Brady claim regarding a taped interview of Landrum in Drew's first habeas petition.  Drew, 964 F.2d at 419-20.

to lose by incriminating himself after receiving a 60-year sentence. See Drew, 964 F.2d at 421-22 (citing United States v. Vergara, 714 F.2d 21, 23 (5th Cir. 1983) (holding that the district court may deny a new trial, even without an evidentiary hearing, if it determines that a previously silent accomplice's postconviction willingness to exculpate his codefendant is not credible or would not be sufficient to produce a different result)); Drew, 743 S.W. 2d at 228 ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement."). Further, Puralewski's costless self-incrimination conflicts with several of his pretrial statements in which he proclaimed that Drew was the lone murderer.[6]

Third, the new prisoner affidavit is no more convincing than the old prisoner affidavits regarding Puralewski's alleged statements that he acted alone. Like Puralewski's own affidavit, the affidavits of the prisoners do not dispute the evidence at trial that: (1) Drew robbed Sly and threatened to cut his throat;[7]

_____

[6]On February 24, 1983, Puralewski gave a written statement in which he generally corroborated Landrum's version of events, except for his contention that Drew was the lone murderer. On March 16, 1983, Puralewski gave a handwritten statement in which he again generally corroborated Landrum's testimony, but exculpated himself by stating the Drew was the lone murderer. On March 3, 1984, Puralewski wrote a letter to a prospective female juror in his case in which he stated, "`I'm Innocent'! And the guy who did the Capital Murder [, Drew,] is on Death Row . . . ."

[7]Sly testified to Drew's actions at trial.

(2) Drew savagely beat Jeffrey, licked Jeffrey's blood off of his hands, and told Jeffrey that he must die for getting blood on Drew's leather; (3) Drew and Puralewski pulled Jeffrey out of the car; (4) the Drew and Puralewski discarded Jeffrey's butchered corpse in a roadside ditch; (5) Drew bragged that he "f___ing enjoyed" murdering Jeffrey;[8] (6) Drew was covered with blood when he entered the truck stop after the murder; (7) Drew was left-handed and the medical examiner determined that the cuts on Jeffrey's throat were inflicted by a left-handed person; and (8) Drew had Jeffrey's wallet and was wearing Jeffrey's jacket when he was arrested.[9]  Consequently, even if the prisoners' affidavits were true, i.e., Puralewski made the statements to the three prisoners, these statements would not undermine our confidence in the jury's verdict in the least.  Drew, 964 F.2d at 421-22.  See Herrera, ___ U. S. at ___, 113 S.Ct. at 870 (stating that

---

[8]We find particularly compelling the undisputed evidence of Drew's specific expression of intent to kill Jeffrey immediately before and immediately after the murder took place.  Thus, Drew's claim does not effectively diminish his guilt of capital murder, which requires a deliberate intent or a wreckless indifference mens rea.  See TEX. CODE CRIM. PROC. art. 37.071(b)(1)(Vernon 1981); Sawyer v. Whitley, ___ U.S. ___, ___-___, 112 S.Ct. 2514, 2519-23, 120 L.Ed.2d 269 (1992); Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

[9]We note that Drew, neither personally nor through his counsel, asserted at trial that Puralewski acted alone in murdering Jeffrey.  Furthermore, except for his plea of not guilty entered more than ten years ago at arraignment, the record does not reflect any statement by Drew that he did not murder Jeffrey.

postconviction affidavits "must be considered in light of the proof of petitioner's guilt at trial . . .").

In sum, the overwhelming trial evidence stands as an unequivocal rejection of Drew's attempt to unseat the jury's unanimous verdict of guilt and sentence of death.  Thus, even under the least stringent standard considered by the <u>Herrera</u> Court, and which the dissenters argued for, Drew has failed to demonstrate that he "probably is innocent."  <u>Herrera</u>, ___ U.S. at ___, 113 S.Ct. at 882-83 (Blackmun, J., dissenting).  The criminal justice system has afforded Drew ample, and seemingly endless, process for making his unpersuasive postconviction claim.  The Texas Board of Pardons considered and rejected Drew's claim by a 15-0 vote.  <u>See id.</u> at ___, 113 S.Ct. at 868-69 (indicating that executive clemency provides a "fail safe" in our criminal justice system).  The Texas habeas courts have twice considered all the affidavits and evidence of record and have rejected Drew's claim.  The federal courts have previously rejected Drew's claim.  Drew has abused the writ, and his application for CPC and his motion for stay of execution are

D E N I E D.