IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30354

_____

ANTONIO JAMES

                              Petitioner,

v.

BURL CAIN, Warden,
Louisiana State Penitentiary,
Angola, Louisiana,

                              Respondent.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

On Application for Certificate of Probable Cause
and Motion for Stay of Execution
_____

(April 17, 1995)

Before KING, JONES, and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Antonio James is scheduled to be executed on April 18, 1995 between the hours of 12:00 AM and 3:00 AM. On April 13, 1995, the district court denied Antonio James's fourth petition for writ of habeas corpus in which James sought to set aside his December 1981 Louisiana first-degree murder conviction and death sentence. James's applications for a certificate of probable cause and for a stay of execution were similarly denied. James has filed a notice of appeal from the denial of his habeas petition, and the case is now before us on James's application for a certificate of probable cause and his motion for a stay of execution. We find that James

has failed to make the required showing for a certificate of probable cause, and therefore, we deny his application. We also find that he has failed to make the requisite showing for a stay of execution, and as a consequence, we deny his motion for a stay.

## I.  PROCEDURAL BACKGROUND

James was charged in a July 12, 1979 indictment with the first-degree murder of Henry Silver. Following a jury trial in the Orleans Parish district court on December 14-16, 1981, James was found guilty as charged and sentenced to death. The circumstances of the murder and the evidence adduced at trial are described in some detail in the first of our two prior opinions addressing James's earlier habeas petitions. See James v. Butler, 827 F.2d 1006 (5th Cir. 1987), cert. denied, 486 U.S. 1046 (1988). On direct appeal, the Louisiana Supreme Court affirmed James's conviction and sentence, and the United States Supreme Court denied his petition for writ of certiorari. See State v. James, 431 So. 2d 399 (La.), cert. denied, 464 U.S. 908 (1983).

James unsuccessfully sought state post-conviction relief, and in November 1983, he filed his first petition for habeas relief in federal district court. In June of 1984, the district court dismissed the petition without prejudice for failure to exhaust state remedies. Subsequently, James again attempted to seek post-conviction relief in the Louisiana state courts, and once again, he was unsuccessful.

In late July of 1984, James filed his second habeas petition in federal district court. The district court granted a stay of

2

execution and set an evidentiary hearing for October 4-5, 1984. On October 17, 1985, the district court issued a lengthy opinion rejecting each of James's claims, dismissing his petition with prejudice, and vacating the previously entered stay. James timely filed a motion for new trial and requested a stay of execution. Following a November 26, 1985 nonevidentiary hearing on these matters, the district court granted a stay of execution and took the motion for new trial under advisement. On September 17, 1986, the district court issued a memorandum opinion and order denying the motion for new trial and vacating the stay of execution. James filed a notice of appeal to this court, and he applied for a certificate of probable cause and a stay of execution pending appeal. In a lengthy opinion, we denied the application for CPC, and we vacated the interim stay of execution that we had previously entered. See James v. Butler, 827 F.2d 1006 (5th Cir. 1987), cert. denied, 486 U.S. 1046 (1988).

James then brought a series of state court attacks on his December 1981 conviction and sentence, all of which were ultimately denied by the Louisiana Supreme Court, without opinion, in orders dated December 9, 1988, January 30, 1989, and February 9, 1989. On February 10, 1989, James brought his third federal habeas attack on his December 1981 conviction and sentence. The district court granted a stay of execution, and on May 11, 1989, the court held an evidentiary hearing on James's claim that the state withheld exculpatory evidence. On September 19, 1989, the court issued an opinion denying all of James's claims and dismissing his petition.

3

The district court granted a CPC, however, and stayed the execution pending appeal. In yet another lengthy opinion, we affirmed the district court's judgment. See James v. Whitley, 926 F.2d 1433 (5th Cir. 1991).

On September 9, 1991, James again sought post-conviction relief in the state courts, and the Louisiana Supreme Court granted a stay of execution on September 12, 1991. On September 23, 1994, the Louisiana Supreme Court recalled the stay order and denied the writ. The United States Supreme Court denied certiorari on March 20, 1995. On April 7, 1995, James again sought state court relief, as he moved for a hearing and a stay of execution. The trial court dismissed the petition on procedural objections advanced by the state, and the Louisiana Supreme Court denied review on April 12, 1995.

Thus, on April 13, 1995, James filed his fourth habeas petition in federal district court, seeking habeas relief as well as a stay of execution. On the same day, the district court granted James's motion to consolidate his habeas petition (the "Silver" petition) with his habeas petition in a separate case where James had been convicted of first-degree murder and had received a life sentence (the "Adams" petition).[1] In the district court, James raised the following claims in his Silver petition: 1) a defective reasonable doubt jury instruction that impermissibly

---

[1] On October 30, 1981, James was convicted of the first-degree murder of Alvin Adams in the Orleans Parish district court. The jury failed to reach a unanimous decision on sentencing, and James was sentenced to life without the benefit of probation, parole, or suspension of sentence.

lowered the burden of proof was used in violation of the Sixth, Eighth, and Fourteenth Amendments; 2) the effective assistance of counsel was denied in violation of the Sixth, Eighth, and Fourteenth Amendments; 3) evidence of a prior murder conviction (the Adams murder) was admitted in violation of due process and the Eighth Amendment; and 4) a death sentence for James was requested by the victim's widow in violation of the Eighth and Fourteenth Amendments.[2] On the same day, April 13, 1995, the district court entered judgment dismissing both of James's habeas petitions and denying James's application for a CPC and his motion for stay of execution.

Before us, on his application for a CPC and his motion for stay of execution, James asserts only one claim -- a claim raised in his Silver petition -- regarding the trial court's alleged use of a defective reasonable doubt jury instruction that impermissibly lowered the burden of proof in violation of the Sixth and Fourteenth Amendments. According to James, the application presents to us only "those issues which he feels deserves the encouragement to proceed further." No other claims from the Silver or Adams petitions filed in the district court are alleged.

## II.  STANDARD OF REVIEW

---

[2]     James raised the following claims in his Adams petition:  1) false evidence was presented and a false impression from the evidence was created in violation of the rights to due process and freedom from cruel and unusual punishment; and 2) the effective assistance of counsel was denied in violation of the Sixth, Eighth, and Fourteenth Amendments.

5

We have no jurisdiction to address the merits of James's appeal from the district court's denial of habeas relief unless we grant a CPC.  See Drew v. Scott, 28 F.3d 460, 462 (5th Cir.), cert. denied, 115 S. Ct. 5 (1994).  To obtain a CPC, James must make a substantial showing that he has been denied a federal right.  See Barefoot v. Estelle, 463 U.S. 880, 893 (1983); Jacobs v. Scott, 31 F.3d 1319, 1323 (5th Cir. 1994), cert. denied, 115 S. Ct. 711 (1995).  James must "demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  Barefoot, 463 U.S. at 893 n.4 (citations omitted) (internal quotations omitted).  In a capital case, although the court may properly consider the nature of the penalty in deciding whether to grant a CPC, this alone does not suffice to justify issuing a certificate.  See id. at 893; Jacobs, 31 F.3d at 1323.  Furthermore, the Supreme Court has indicated that "the issuance of a certificate of probable cause generally should indicate that an appeal is not legally frivolous."  Barefoot, 463 U.S. at 894.  Similarly, we will grant a stay of execution only if James shows that there are "substantial grounds upon which relief might be granted."  Drew, 28 F.3d at 462 (internal quotation omitted).

### III.  ANALYSIS AND DISCUSSION

After discussing the abuse of the writ doctrine, we turn to an examination of James's argument.

### A.  Abuse of the Writ

6

In McCleskey v. Zant, 499 U.S. 467, 490 (1991), the Supreme Court held that "the same standard used to determine whether to excuse state procedural defaults should govern the determination of inexcusable neglect in the abuse-of-the-writ context." In other words, a claim in a serial habeas petition must be dismissed as an abuse of the writ unless the petitioner demonstrates that there was "cause" not to have raised the claim in a previous federal habeas petition, and "prejudice" if the court fails to consider the new claim. See Wainwright v. Sykes, 433 U.S. 72 (1977); Woods v. Whitley, 933 F.2d 321, 323 (5th Cir. 1991). The McCleskey Court explained the cause standard as follows:

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. Objective factors that constitute cause include "`interference by officials'" that makes compliance with the state's procedural rule impracticable, and "*a showing that the factual or legal basis for a claim was not reasonably available to counsel*."

499 U.S. at 493-94 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis added) (citations omitted). In Selvage v. Collins, 975 F.2d 131, 133 (5th Cir. 1992), cert. denied, 113 S. Ct. 2445 (1993), we reiterated the notion that a failure to raise a claim in an earlier habeas petition may not be excused for cause "if the claim was reasonably available" at the time of the earlier petition, and we explicitly referred to the Supreme Court's admonition in Engle v. Isaac, 456 U.S. 107, 129-30 (1982), that claims are "reasonably available" even where their assertion would in all likelihood be "futile." We also noted that "`[A] comparison

7

of <u>Reed</u> and <u>Engle</u> makes plain [that] the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of default the claim was `available' at all.'" <u>Selvage</u>, 975 F.2d at 134 (quoting <u>Smith v. Murray</u>, 477 U.S. 527, 537 (1986)). Thus, "an omission of a claim [in an earlier habeas petition] may be excused for cause ***only if the question was so novel that it lacked a reasonable basis in existing law***." <u>Id.</u> at 135 (emphasis added). As we observed, "[a] claim is `novel' under <u>Engle</u> and <u>Reed</u> if `counsel has no reasonable basis upon which to formulate a constitutional question.'" <u>Id.</u> at 136 (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 14 (1984)); <u>see also</u> <u>Engle</u>, 456 U.S. at 134 ("Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause . . . .").

Even if the petitioner is able to establish cause, he must still demonstrate "`actual prejudice' resulting from the errors of which he complains." <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982). The improprieties upon which the petitioner bases his claims must have "infect[ed] his entire trial with error of constitutional dimensions." <u>Id.</u> at 170. Without this showing of "actual prejudice," a serial habeas petition is still subject to dismissal as an abuse of the writ.[3]

---

[3] We note that James raised a claim of "actual innocence" in the district court, but he has not renewed this claim in his application for a CPC. Thus, James does not here allege that a failure to grant his fourth federal habeas petition would result in a fundamental miscarriage of justice.

## B.  Defective Jury Instruction

James's claim is that the "reasonable doubt" definition given to the jury at his trial was defective to the extent that "reasonable doubt" was defined as "an actual or substantial doubt," as well as a "grave" doubt.[4]  According to James, "the adjectives

---

[4]     The jury instruction stated the following:

In charging you on reasonable doubt and the presumption of innocence, the law sets forth three basic principles.  One, a person accused of a crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt.  Secondly, it is the duty of the jury in considering the evidence and in applying to that evidence the law as given by the court to give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence in the case.  And, thirdly, it is the duty of the jury if not convinced of the guilt of the defendant beyond a reasonable doubt to find him not guilty.  The consequence of this rule is that the defendant is not required to prove his innocence, but may rest upon the presumption in his favor until it is overcome by positive, affirmative proof.  Therefore, it is upon the State to establish to your satisfaction and beyond a reasonable doubt the guilt of the accused as to the crime charged in the bill of indictment or any lesser one included in it.  The lesser verdicts, of course, you've heard a lot about and I will give you a copy of them when you retire to the jury room.  It is incumbent on the state to prove the offense charged to your satisfaction beyond a reasonable doubt and before you can convict the accused you must be satisfied from the evidence that the defendant is guilty beyond a reasonable doubt.  A reasonable doubt, ladies and gentlemen, is not a mere possible doubt.  It is an actual or substantial doubt.  It is a doubt based upon reason and common sense.  It is such a doubt as a reasonable person would seriously entertain.  It is a grave, serious, sensible doubt, such as you could give a good reason for.  A reasonable doubt is present when after -- pardon me -- a reasonable doubt is present when after you carefully consider all of the evidence, you cannot say you are fully convinced of the truth of the charge.  You must not resort to extraneous facts and circumstances in reaching your verdict.  That is,

9

defining reasonable doubt -- actual, substantial and grave -- . .
. served to relax impermissibly the beyond-a-reasonable-doubt
standard," allegedly because the common understanding of these
adjectives suggests a higher degree of doubt than the degree
required for acquittal under the reasonable doubt standard. James
contends that this "defect" in the jury instruction on reasonable
doubt violates the Fourteenth Amendment, see Cage v. Louisiana, 498
U.S. 39 (1990) (per curiam), and the Sixth Amendment, see Sullivan
v. Louisiana, 113 S. Ct. 2078 (1993).[5]

The district court dismissed this claim of "defect" on abuse
of the writ grounds, noting that "this is also an issue that is
tainted with successiveness and abuse because, again, there was
simply no impediment to raising this issue before now."  In his
application for a CPC, James disagrees with this finding, arguing
that the novelty of this claim establishes cause for his failure to
raise the claim on an earlier habeas petition:

> Contrary to the district court's ruling, Petitioner
> asserts that the Sullivan Sixth Amendment claim could not

you must not go beyond the evidence to find facts or
circumstances to create guilt, but you must restrict
yourselves to the evidence that you heard on the trial.
However, the jury is not restricted to the evidence
adduced from the witness stand for the creation of a
reasonable doubt.

[5]     In Cage, the Supreme Court held that a reasonable juror
could have interpreted the reasonable doubt instruction in that
case to allow a finding of guilt based upon a degree of proof
below that required by the Due Process Clause of the Fourteenth
Amendment.  See 111 S. Ct. at 328-30.  In Sullivan, the Supreme
Court held that a Cage-like defective reasonable doubt
instruction also violated the Sixth Amendment right to jury
trial.  See 113 S. Ct. at 2081.

10

have been raised prior to 1993 when <u>Sullivan</u> was decided, nor has Petitioner found that this Sixth Amendment issue was being raised and discussed prior to 1993. While it may be true that reasonable doubt instruction claims under the Due Process Clause were being litigated, prior to 1990, the <u>Cage</u> opinion dealt specifically with the infirm definitions not found in prior cases.

We simply cannot accept James's overly-parsed novelty characterization, as we conclude that the defective instruction claim had a reasonable basis in existing law and was reasonably available at the time of James's earlier habeas petitions. Indeed, in 1982, the Supreme Court of Louisiana decided <u>State v. McDaniel</u>, 410 So. 2d 754 (La. 1982), in which it reversed a criminal conviction in part because "by redefining `reasonable doubt' as `a doubt that would give rise to a great uncertainty' and `one that would make you feel morally uncertain as to the defendant's guilt,' the trial court's instruction created a reasonable possibility [that] the jury was misled into applying an insufficient standard." <u>Id.</u> at 756. The court noted that "[e]ven when the phrase `great uncertainty' is viewed in the context of the whole charge it overstates the degree of uncertainty required for a reasonable doubt." <u>Id.</u> Similarly, the court observed that "`[m]orally uncertain' could be interpreted to mean that the uncertainty must be based on feeling, i.e., lack of moral indignation rather than a reasonable doubt about an essential fact." <u>Id.</u> This was problematic, as the <u>McDaniel</u> court explained:

> ***An instruction which misleads or confuses the jury as to the meaning of reasonable doubt may create an error of constitutional dimensions.*** As stated by the United States Supreme Court in recognizing the inevitability of error even in criminal cases, "[w]here one party has at stake an interest of transcending value -- as a criminal

11

defendant his liberty -- this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt." Speiser v. Randall, 357 U.S. 513, 525-526 (1958). In 1970, the high court explicitly held that the [D]ue [P]rocess [C]lause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

410 So. 2d at 756 (emphasis added) (citations omitted).

After McDaniel, challenges to the "reasonable doubt" definition in jury instructions and questions as to whether the definitions impermissibly lowered the burden of proof were raised and litigated in numerous Louisiana cases, and a host of published opinions were rendered. See, e.g., State v. Clark, 446 So. 2d 293, 300 (La. 1984) (challenging the use of "serious doubt"); State v. Holmes, 516 So. 2d 184, 188 (La. Ct. App. 1987) (analyzing a challenged instruction that included "actual or substantial doubt" and "serious doubt," and noting that the defendant "alleges that the use of the words `serious', `actual', and `substantial' render this jury instruction defective"); State v. Augustine, 482 So. 2d 150, 152-53 & n.6 (La. Ct. App. 1986) (analyzing a challenged instruction that included "actual or substantial doubt" and "grave uncertainty"); State v. Rodney, 459 So. 2d 669, 670-71 (La. Ct. App. 1984) (analyzing a challenged instruction that included "actual doubt" and "serious doubt"); State v. Moore, 439 So. 2d 1178, 1178-80 (La. Ct. App. 1983) (challenging the use of "grave uncertainty"). It is important to note that these challenges are strikingly similar to James's current attack on the adjectives

12

"actual," "substantial," and "grave" that were used in his jury instruction.

Because it is clear that claims of defective "reasonable doubt" instructions have been percolating in the Louisiana courts at least since 1982, there is no excuse for James's failure to allege the definitional defect in his prior 1983, 1984, or 1989 habeas petitions. Even if the *identical* language of James's reasonable doubt definition was not litigated in prior cases, there clearly was a reasonable basis for *James's* defective instruction claim in the existing law, especially considering that, at least since 1982, the Louisiana courts had been looking for constitutional error in various permutations of the reasonable doubt definition.

James argues, however, that even if the Louisiana courts were entertaining claims of defective reasonable doubt instructions, the claims were all couched in a due process context, rather than in a Sixth Amendment context. According to James, <u>Sullivan v. Louisiana</u>'s 1993 holding that the Sixth Amendment was violated by an infirm reasonable doubt instruction "was new in every sense of the word." <u>See</u> <u>Sullivan</u>, 113 S. Ct. 2078, 2081 (concluding that a jury instruction which lowers the burden of proof for conviction violates a defendant's Sixth Amendment right to jury trial).

We disagree with James's attempt to characterize the Sixth Amendment *impact* that arises from a claim of defective reasonable doubt instruction as a "new" *claim* that constitutes cause. Indeed, the basis for the claim -- whether it affects the defendant's

13

rights under the Fifth Amendment, the Fourteenth Amendment, or the Sixth Amendment -- is the same; it stems from the same allegedly defective nature of the jury instruction and the same alleged lowering of the burden of proof for conviction. As the Sullivan Court recognized:

> It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as *Winship* requires) whether he is guilty beyond a reasonable doubt. **In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt**. Our *per curiam* opinion in Cage, which we accept as controlling, held that an instruction of the sort given here does not produce such a verdict. Petitioner's Sixth Amendment right to jury trial was therefore denied.

113 S. Ct. at 2081 (emphasis added) (footnote omitted).

Simply put, the claim's due process and Sixth Amendment ramifications do not alter the fact that it is a claim based upon the same underlying flaw. It is true that the consequences that flow from an alleged defect could vary once a reasonable doubt defect has been established -- i.e., a Sixth Amendment violation is a "structural defect" which is not amenable to "harmless-error" analysis, see Sullivan, 113 S. Ct. at 2082-83, while a due process violation may be harmless error, see id. at 2081 -- but the threshold determination as to whether the burden of proof has been impermissibly lowered is the same. Thus, despite differing consequences and impacts, the underlying claim of a defective "reasonable doubt" instruction that lowers the burden of proof was reasonably available to James at the time of his earlier habeas

14

petitions.[6]  James, however, has never previously raised the claim at all -- either with due process consequences or Sixth Amendment consequences -- and he offers no explanation for why a reasonable lawyer would have been required to wait for a fleshing out of the claim's impact on the defendant's Sixth Amendment right to jury trial before raising the "defective instruction" claim at all.

Put another way, we could say that the Sixth Amendment challenge to the jury instruction is a different "claim" from a Due Process Clause challenge to the same instruction, both in terms of the constitutional provision upon which it is based, and in terms of the consequences which would flow from a finding of a violation. But where, as here, the Sixth Amendment violation would be predicated on a finding that the jury instruction is flawed under the Due Process Clause, see Sullivan, 113 S. Ct. at 2081, and where similar due process challenges were being made in the Louisiana courts in the early 1980s, we think that James had a reasonable basis upon which to formulate the predicate due process challenge

---

[6]  We recognize that we have found Cage's "rule" regarding a defective reasonable doubt instruction to be a "new rule" for purposes of Teague v. Lane, 489 U.S. 288 (1989).  See Skelton v. Whitley, 950 F.2d 1037, 1043 (5th Cir.), cert. denied, 113 S. Ct. 102 (1992).  Nevertheless, this is not inconsistent with our finding today that James's claim of a defective reasonable doubt instruction is **not** a new claim for "novelty" and "cause" purposes in an abuse of the writ context.  As we later concluded in Selvage, "not all rules found to be `new' under Teague are novel for cause purposes.  Such symmetry would obtain if `novelty' had the same breadth under Engle and Reed as it does under Teague. The two standards, however, are guided by sharply different definitions of `new.'"  975 F.2d at 136.  Because of our disposition of James's application for a CPC on novelty and cause grounds in an abuse of the writ context, it is unnecessary for us to address the Teague issue.

to the jury instruction given in his case. Fidelity to the principles which animate Rule 9(b)'s proscription of abusive petitions cautions against allowing James to use the advent of Sullivan to escape his earlier obligation to raise the due process claim on which a successful Sixth Amendment claim under Sullivan would be predicated. This is particularly so where counsel is unable to articulate why the advent of Sullivan was a necessary precursor to James's challenge to his allegedly defective jury instruction.

In summary, we do not think that the question of whether cause exists for James's failure to raise his defective jury instruction in his first habeas petition is debatable among jurists of reason or deserves encouragement to proceed further.[7]

## IV.  CONCLUSION

For the foregoing reasons, James's application for a CPC and his motion for stay of execution are DENIED.

---

[7]  While we need not and do not address the merits of James's challenge to the reasonable doubt instruction given to the jury at his trial for the Silver murder, we note that his argument proceeds by isolating three words -- actual, substantial and grave -- and by arguing that those words were not accompanied by the same types of explanations that salvaged the instructions in Victor v. Nebraska, 114 S.Ct. 1239 (1994). What James fails to do, however, is to examine the allegedly defective language in the light of the jury charge as a whole. The district court did so and found that "the instruction given is not constitutionally tainted within the meaning of Sullivan and Cage, especially after the decision in Victor v. Nebraska."

16