DELO, SUPERINTENDENT, POTOSI CORRECTIONAL
CENTER *v.* STOKES

No. A–795.   Decided May 11, 1990

PER CURIAM.

The State of Missouri has issued a warrant for the execution of Winford Stokes, which expires at 11:59 p.m. CDT on May 11, 1990.   Stokes was convicted of capital murder in 1979 and sentenced to death.   His conviction and sentence were affirmed by the Missouri Supreme Court.   *State* v. *Stokes*, 638 S. W. 2d 715 (1982) (en banc).   Stokes has since filed three separate petitions for a writ of habeas corpus in the federal courts, each of which was denied.   See *Stokes* v. *Armontrout*, 851 F. 2d 1085 (CA8 1988), cert. denied, 488 U. S. 1019 (1989); *Stokes* v. *Armontrout*, 893 F. 2d 152 (CA8 1989), stay of execution denied, *post*, p. 926; *Stokes* v. *Armontrout*, No. 89–0133C(6) (ED Mo., Mar. 16, 1990).   On

May 10, 1990, this Court denied a stay of execution pending the filing and disposition of a petition for certiorari relating to one of Stokes' first three habeas petitions. *Post,* p. 926.

While his application for stay of execution was pending in this Court, and within a matter of days before the scheduled execution, Stokes filed in the District Court a new application for stay of execution pending consideration of a fourth federal habeas petition. On the afternoon of May 9, the District Court granted a stay of execution, stating that "the issues raised by petitioner's claim that his right to equal protection of the laws was violated by the Missouri state courts' selective application of the rules governing lesser included offense instructions in capital murder cases warrant the imposition of a stay of execution. *See Williams* v. *Armontrout,* 891 F. 2d 656, 658–59 (8th Cir. 1989), *vacated upon grant of rehearing en banc* (February 7, 1990)." No. 90–0505C(6) (ED Mo.). On the morning of May 11, a panel of the Court of Appeals for the Eighth Circuit denied the State's motion to vacate the stay, one judge dissenting. The State then asked the en banc Court of Appeals to vacate the stay. That motion was also denied. The State has now filed with this Court an application to vacate the stay of execution.

A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are "substantial grounds upon which relief might be granted." *Barefoot* v. *Estelle,* 463 U. S. 880, 895 (1983). There are no "substantial grounds" present in this case, because respondent's fourth federal habeas petition clearly constitutes an abuse of the writ. See 28 U. S. C. § 2254 Rule 9(b); 28 U. S. C. § 2244(b). Stokes' claim that he was entitled to a lesser included offense instruction, and that the Missouri Supreme Court has selectively applied its rules relating to that claim, could have been raised in his first petition for federal habeas corpus. The equal protection principles asserted by respondent are not novel and could have been de-

veloped long before this last minute application for stay of execution. Indeed, Stokes himself cites dissenting opinions filed in the Missouri Supreme Court in 1983 to support his contention. See, *e. g.*, *State* v. *Holland*, 653 S. W. 2d 670, 679 (en banc) (Welliver, J., dissenting).

The fourth federal habeas petition now pending in the District Court "is another example of abuse of the writ." *Woodard* v. *Hutchins*, 464 U. S. 377, 378–380 (1984) (Powell, J., concurring, joined by four other Justices) (vacating stay of execution where claims in a successive petition could, and should, have been raised in a first petition for federal habeas corpus). The District Court abused its discretion in granting a stay of execution. The application to vacate the stay is granted.

*It is so ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, concurring.

I join in the opinion of the Court. The more than 24-hour delay in the Court of Appeals' ruling on the State's motion to vacate the stay granted on this fourth successive petition, one which discloses no substantial ground for relief, makes appropriate some additional comments.

In this case, execution was scheduled for 12:01 a.m. CDT on May 11, 1990, under a warrant which expires, as the Court indicates, at 11:59 p.m. CDT on May 11, 1990. The Eighth Circuit found itself unable to rule on a motion to vacate a District Court stay until midafternoon on Friday, May 11. All courts of appeals should consider implementing, and following, procedures, such as those employed by the Eleventh Circuit, see Rule 22–3, Rules of the United States Court of Appeals for the Eleventh Circuit (1987), to make certain that three active judges are available to act upon emergency stays of this sort and to provide a timely ruling from the panel as a body, so that this Court may also rule upon the case where necessary and appropriate.

If the court of appeals fails to act in a manner sufficiently prompt to preserve the jurisdiction of the court and to protect the parties from the consequences of a stay entered without an adequate basis, an injured party may seek relief in this Court pursuant to our jurisdiction under the All Writs Act, 28 U. S. C. § 1651. See *Maxwell* v. *Bishop*, 385 U. S. 650 (1967) (common-law petition for writ of certiorari granted where shortness of time available before a scheduled execution made ordinary appeal procedure unavailable).

Delay or default by courts in the federal system must not be allowed to deprive parties, including States, of the lawful process to which they are entitled. It is the duty of the courts of appeals to adopt and follow procedures which ensure all parties expeditious determinations with respect to any request for a stay. Prompt review and determination is necessary to enable criminal processes to operate without undue interference from the federal courts, and to assure the proper functioning of the federal habeas procedure.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins and JUSTICE BLACKMUN joins as to Parts I, II, and III, dissenting.

I

Today the Court vacates a stay of execution entered by the United States District Court for the Eastern District of Missouri and found to be within that court's discretion by the United States Court of Appeals for the Eighth Circuit, sitting en banc. Contrary to the majority's intimations, this case does not involve a last minute stay application by a defendant on the eve of his execution. Rather, Winford Stokes raised an equal protection claim in an amendment to a petition for writ of habeas corpus pending in the District Court on April 5, 1990, before the current execution date had been set.* The rush to judgment is instigated here by the

---

*At that time, a stay of execution was in effect pending review by the Eighth Circuit of the District Court's denial of a previous habeas peti-

State's insistence on vacating the District Court's grant of a stay to consider Mr. Stokes' claim.

"In lifting the stay imposed by the Court of Appeals, the Court has resorted to an exercise of power that is unusual and that should only be resorted to on the rare occasion in which a lower court has flagrantly abused its discretion." *Wainwright* v. *Adams*, 466 U. S. 964, 965 (1984). The Court does so on the basis of a rule that quite properly vests considerable discretion in the court most familiar with the facts of the case and its prior history. Title 28 U. S. C. § 2254 Rule 9(b) provides that:

> "A second or successive petition *may* be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." (Emphasis added.)

The judge to whom Mr. Stokes applied for a writ of habeas corpus did not choose to dismiss on such grounds. To the contrary, Judge George F. Gunn found that:

> "Upon thorough consideration of the record before it, the Court concludes that the issues raised by petitioner's claim that his right to equal protection of the laws was violated by the Missouri state courts' selective application of the rules governing lesser included offense instructions in capital murder cases warrant the imposition of a stay of execution."

This Court has said repeatedly that the principles governing the disposition of successive writs "are addressed to the sound discretion of the federal trial judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies . . . . We are confident that

---

tion. This stay was dissolved by the Court of Appeals on April 24. On April 27, the Missouri Supreme Court set Stokes' execution date for May 11.

this power will be soundly applied." *Sanders* v. *United States*, 373 U. S. 1, 18–19 (1963). See also *Wainwright* v. *Booker*, 473 U. S. 935, 938 (1985) (MARSHALL, J., dissenting) ("[T]he lower court's decision is 'deserving of great weight' "). Judge Gunn is particularly well situated to exercise the discretion Congress has entrusted to him. He has heard three of Mr. Stokes' habeas applications, attending to the complex issues and detailed facts of Mr. Stokes' conviction over several years.

The Eighth Circuit, also closer to this case than we could hope to be in the few hours we have had to consider the matter, found the District Court's order sound and responsible. The Court of Appeals similarly is due considerable deference. See *Barefoot* v. *Estelle*, 463 U. S. 880, 896 (1983) ("A stay of execution should first be sought from the court of appeals, and this Court generally places considerable weight on the decision reached by the courts of appeals in these circumstances"); *O'Connor* v. *Board of Education of School District 23*, 449 U. S. 1301, 1304 (1980) (STEVENS, J., in chambers) ("A Court of Appeals' decision to enter a stay is entitled to great deference"). Nonetheless, this Court has decided that both the District Court and the Court of Appeals have committed such gross abuses of discretion that this Court must intervene. Nothing in the Court's opinion explains adequately why the lower courts have been adjudged so harshly.

II

The Court vacates the stay granted by the District Court because in this Court's judgment, Mr. Stokes' claim "could have been developed long before this last minute application for stay of execution." *Ante*, at 321–322. I do not share the Court's confidence in the matter. While the "equal protection *principles* asserted" by Mr. Stokes are hardly novel, *ibid.* (emphasis added)—indeed, they date back to 1868—the nature of Mr. Stokes' *claim* is a different matter.

To determine whether the claim is novel, we must begin by defining what it *is*. The lower courts have not ruled on the merits of Mr. Stokes' claim. Rather, they in effect have held his case in abeyance pending resolution of *Williams* v. *Armontrout*, 891 F. 2d 656 (1989); in this case, the Eighth Circuit, sitting en banc, is reviewing a panel decision that the selective application by Missouri courts of the decision in *State* v. *Baker*, 636 S. W. 2d 902, 904–905 (1982) (en banc), cert. denied, 459 U. S. 1183 (1983), "denies similarly situated defendants in capital murder cases equal protection of the law in violation of the fourteenth amendment of the United States Constitution." 891 F. 2d, at 659. Given that the Eighth Circuit has not determined definitively the contours of the equal protection claim, it is impossible to say at this time whether the claim constitutes a "novel" one.

Even if we could ascertain the precise character of the claim, in order to decide whether it could have been raised in a previous habeas petition we also would have to engage in a comprehensive review of Missouri state cases over the past decade. The Court today does not even purport to do this. In other contexts, the Court has noted that whether a legal claim is a "novel" one depends on an inquiry into existing precedents. Cf. *Butler* v. *McKellar*, 494 U. S. 407, 415 (1990) (that claim is "within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision" does not prevent it from being a "new rule" for purposes of retroactivity). Thus, the mere fact that the Court today can point to an opinion of a dissenting Missouri Supreme Court Justice in 1983 hardly establishes that Mr. Stokes' claim is not "novel."

## III

When a person's life is at stake we cannot tolerate such facile judgments. I would rather rely on the considered wisdom of the courts below, aided by their familiarity with Missouri law, that Mr. Stokes' claim cannot be decided until *Williams* is resolved. Given the dire consequences of error,

the Court's rush to judgment is unseemly and indefensible. See *Woodard* v. *Hutchins*, 464 U. S. 377, 382–383 (1984) (BRENNAN, J., dissenting); *id.*, at 384 (MARSHALL, J., dissenting). There is no call to deny a district court the time it needs to consider properly a petitioner's claim. "It is . . . important that before we allow human lives to be snuffed out we be sure—emphatically sure—that we act within the law." *Rosenberg* v. *United States*, 346 U. S. 273, 321 (1953) (Douglas, J., dissenting).

## IV

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would deny the application to vacate the stay entered by the District Court.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

In my opinion both the District Court and the Court of Appeals—particularly when acting en banc—are in a far better position than this Court to determine whether a successive petition for habeas corpus constitutes an abuse of the writ. Accordingly, I respectfully dissent from the Court's summary disposition of the application to vacate the stay entered by the District Court and upheld by the Court of Appeals.