**Clarence Allen LACKEY, Petitioner,**

**v.**

**Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

**MO–95–CA–68–F.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

April 21, 1995.

Robert C. Owen, Brent E. Newton, Rita J. Radostitz, Texas Resources Center, Austin, TX, for plaintiff.

Dan Morales, John Jacks, Atty. Gen., Austin, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

FURGESON, District Judge.

This day the court considered Petitioner's Motion for Stay of Execution. For the following reasons, the court grants this Motion.

Clarence Allen Lackey's claim is an unusual one and comes to this court in an unusual posture. While the Supreme Court has refused to review three different petitions for writ of certiorari from Lackey, he did achieve something of a breakthrough on his third try, because he caught the attention of Justice Stevens. *See* Memorandum Respecting Denial of Certiorari, *Lackey v. Texas,* — U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995). With Justice Breyer in agreement, Justice Stevens urged further consideration by lower courts of Lackey's claim that his seventeen-year wait on death row constitutes a violation of the Eighth Amendment because a large portion of the wait is attributable to deliberate State action. Labeling the claim as "important," "novel" (three times), "legally complex" and with "potential for far-reaching consequences," Justice Stevens concluded that it "seems an ideal example" of a claim that would benefit from further study by state and federal courts. — U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304. This opinion was bolstered, in part, by a recent decision from the highest court in England that found persuasive a claim similar to Lackey's which was raised under the English precursor to the Eighth Amendment. *See Pratt & Morgan v. The Attorney General of Jamaica,* Privy Council Appeal No. 10 of 1993, 3 WLR 995, 143 NLJ 1639, 2 AC 1, 4 All ER 769 (1993) (en banc).

Since the Memorandum of Justice Stevens does not operate to halt the legal process, the State set April 28, 1995, as Lackey's date for execution. Lackey then filed this Petition for Writ of Habeas Corpus. In light of the unusual nature of the claim and the inherent complexity of habeas corpus death penalty

jurisprudence, this court conducted several lengthy telephone conferences with counsel for both parties in an effort to clarify the issues and to inform counsel of the court's developing views. The court also placed itself under a self-imposed deadline to reach an early decision, not only because Petitioner's execution date was set for April 28, but also because an appeal was likely and a reviewing court deserved reasonable time to consider the matter. Although the court's self-imposed deadlines slipped, it was through no fault of both counsel, who responded promptly to all inquiries and are to be commended for their constructive input.

One unexpected result came from the court's delay. Since both counsel understood the court's "developing views," they were alert to breaking legal pronouncements which might address issues of importance to the court. On April 19, 1995, the day the court was set to issue its ruling, Petitioner cited the court to *James v. Cain,* 50 F.3d 1327 (5th Cir.1995). There, the Fifth Circuit analyzed the abuse of the writ doctrine in a habeas corpus death-penalty-stay case in light of the *Barefoot* standard, which asks whether the issue presented is debatable among jurists of reason.[1] This court failed to anticipate the reasoning set forth in *James v. Cain* and had incorrectly decided that *Barefoot* did not apply to the threshold issue of the abuse of the writ. Accordingly, the court was set to dismiss the petition, based on Respondent's Motion to Dismiss. Under the circumstances, it would have been error to do so. Therefore, even though the delay saved the time of a reversal and remand, it still leaves a reviewing court a very narrow window of time to assess this opinion.

The court had hoped that it would complete its work soon enough for a reviewing court to have at least a week, instead of a few days, to examine this matter. The hope is unrealized. Once again, a reviewing court will be faced with a life-and-death decision under daunting time pressures. This is, of course, a problem across the entire spectrum of habeas corpus death penalty litigation and one of the reasons the jurisprudence in the field has evolved in such a difficult way. Since a reviewing court will have little time for review, this court's one final goal has been to detail the following opinion with sufficient specificity so that appellate analysis can be expedited.

### *FACTUAL BACKGROUND*

On July 31, 1977, in Lubbock, Texas, Diane Kumph met a violent death at the hands of a stranger, Clarence Allen Lackey. After kicking in the front door of her apartment, Lackey abducted her, raped her, severely beat her and then killed her by cutting her throat. Later the same day, he dumped her body by the side of a dirt road outside of town.

Lackey was arrested shortly after the attack. In February 1978 he was tried and convicted of capital murder. The State's evidence at trial left no room for doubt about his guilt.[2]

## PROCEDURAL HISTORY

### 1. DIRECT STATE APPEAL

Lackey has been imprisoned since his arrest in 1977 in connection with the rape and murder of Kumph. Under Texas law, Lackey's 1978 capital murder conviction was automatically appealed to the Texas Court of Criminal Appeals, which heard argument in April 1979 and, in a five-to-four decision, remanded the case to determine whether Lackey had been competent to stand trial in 1978. *Lackey v. State,* 638 S.W.2d 439, 459 (Tex.Crim.App.1982). On another ground, Lackey requested a rehearing, claiming that a prospective juror had been, over objection, prematurely and improperly excused. In support, he cited a Supreme Court case, *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), issued after his appeal had been filed. After the rehearing, the Court of Criminal Appeals agreed with Lackey and reversed his conviction in its entirety. *Lackey v. State,* 638 S.W.2d at 471–76.

1. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

2. *See Lackey v. State,* 638 S.W.2d 439, 439–40 (Tex.Crim.App.1982) for a more detailed recitation of the facts.

In April 1983 Lackey was tried a second time for capital murder. He was convicted once more and sentenced to death. Again, the case went to the Court of Criminal Appeals by automatic appeal, with oral argument being held in March 1984. In one of his points of error, Lackey complained that his request for a special jury instruction at the punishment stage of his trial had been denied, thereby precluding the jury from considering certain mitigating evidence. While the Court of Criminal Appeals held the matter under advisement, several important cases were decided which addressed the issue Lackey had raised. *See Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (holding that defendant did not have an Eighth Amendment right to an instruction that the jury could consider "residual doubts" about guilt as mitigating circumstances during sentencing); *Penry v. Lynaugh,* 832 F.2d 915 (5th Cir.1987) (questioning whether the denial of a jury instruction during sentencing regarding the effect of mitigating evidence gave the jury the full range of discretion to decline to impose the death penalty, as required by the Constitution).

In June 1989 the Court of Criminal Appeals, in a five-to-three decision, affirmed Lackey's conviction and sentence. *Lackey v. State,* 819 S.W.2d 111 (Tex.Crim.App.1989). The Supreme Court reversed the Fifth Circuit weeks later in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (holding unconstitutional jury instructions that allowed consideration of defendant's retardation as an aggravating factor but not as a mitigating factor). Lackey moved for a rehearing, which the Court of Criminal Appeals granted. After additional briefing, the Court of Criminal Appeals issued a second opinion, once again affirming the trial court conviction, this time in a six-to-three decision. *Lackey v. State,* 819 S.W.2d 111, 128–41 (Tex.Crim.App.1991). Lackey's second motion for rehearing was dismissed by the Court. He did not seek certiorari review, and his conviction became final in December 1991, more than seven years after he was sentenced to death for the second time.

### 2. FIRST STATE HABEAS CORPUS PETITION

Lackey was originally scheduled to be executed on July 13, 1992. He obtained two modifications of that date in order to conduct an investigation and present claims in a state habeas corpus application. In December 1992, the state district court denied a third motion to modify the execution date. Lackey filed his first state habeas corpus petition six days before his scheduled execution.

The state district court denied Lackey's requested relief the morning before his scheduled execution. That afternoon, the Texas Court of Criminal Appeals adopted the district court's findings and also denied relief. *Ex parte Lackey,* Writ No. 24,267–01 (Tex.Crim.App. Dec. 16, 1992), *cert. denied, Lackey v. Texas,* — U.S. —, 113 S.Ct. 1319, 122 L.Ed.2d 705 (1993).

### 3. FIRST FEDERAL HABEAS CORPUS PETITION

Lackey then filed his first federal habeas corpus petition in United States District Court in Midland, Texas (Bunton, J., presiding). A stay was granted to permit briefing and an evidentiary hearing. After review, the court denied Lackey's requested relief. *Lackey v. Collins,* Memorandum Opinion and Order, No. MO–92–CA–181 (W.D.Tex. June 11, 1993). The Fifth Circuit affirmed the denial of Lackey's petition for writ of habeas corpus and vacated the stay of execution. *Lackey v. Scott,* 28 F.3d 486 (5th Cir.), *reh'g denied, Lackey v. Scott,* 35 F.3d 564 (5th Cir.1994), *cert. denied, Lackey v. Scott,* — U.S. —, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995).

### 4. SECOND STATE HABEAS CORPUS PETITION

In February 1995, the state district court set Lackey's fourth execution date. Later that month, Lackey filed a second state habeas corpus petition. The state district court and the Court of Criminal Appeals again denied relief. *Ex parte Lackey,* No. 18,075–B, *Findings of Fact and Conclusions of Law,* at 5–6 (137th Dist.Ct. Lubbock County March 1, 1995), *adopted, Ex parte Lackey,*

Writ No. 24,267–02 (Tex.Crim.App. March 1, 1995).

Lackey then petitioned the Supreme Court to issue a writ of certiorari to the Court of Criminal Appeals. On March 3, 1995, the Supreme Court stayed Lackey's execution in order to consider the matter. *Lackey v. Texas,* — U.S. ——, 115 S.Ct. 1274, 131 L.Ed.2d 192 (1995). Less than a month later, the Supreme Court denied the petition, *Lackey v. Texas,* — U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), although Justice Stevens did issue his Memorandum Respecting the Denial of Certiorari, joined by Justice Breyer.

5. SECOND FEDERAL HABEAS CORPUS PETITION

On March 28, Lackey filed his second federal habeas corpus petition, which is the matter now before this court. The State of Texas has set Lackey's fifth execution date for April 28, 1995. In this appeal, Lackey seeks to stay the execution and asserts that, since the great part of his seventeen years on death row is attributable to the State rather than to him, the State has forfeited its right to execute him under the Eighth Amendment prohibition against cruel and unusual punishment.

## *DISCUSSION*

The decision to issue a stay of execution is a matter within the discretion of this court. In this Circuit, a court considering a motion for stay of execution must consider four factors:

> 1) [W]hether the movant has made a showing of likelihood of success on the merits, 2) whether the movant has made a showing of irreparable injury if the stay is not granted, 3) whether the granting of the stay would substantially harm the other parties, and 4) whether the granting of the stay would serve the public interest.

*Buxton v. Collins,* 925 F.2d 816, 819 (1991), *cert. denied,* 498 U.S. 1128, 111 S.Ct. 1095, 112 L.Ed.2d 1197 (1991). The latter three factors are referred to as the "balance of the equities," *O'Bryan v. McKaskle,* 729 F.2d 991, 993 (5th Cir.1984).

As to the first factor, the Petitioner must present, at a minimum, a substantial case[3] on the merits. *Buxton,* 925 F.2d at 817. *See also Delo v. Stokes,* 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) ("A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief might be granted.'") (quoting *Barefoot,* 463 U.S. at 895, 103 S.Ct. at 3396). "Substantial grounds" exist if an issue is "debatable among jurists of reason" or is otherwise "adequate to deserve encouragement to proceed further." *Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3395 n. 4. The overriding question, then, is whether Lackey's petition presents "substantial grounds" for relief.

I. ABUSE OF THE WRIT

The State of Texas argues that Lackey's present claim should be dismissed under the abuse of the writ doctrine, which is codified in Rule 9(b) of the Rules Governing § 2254 Cases:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are

3. In the context of motions for stay of execution in capital habeas claims, that which is a "substantial case on the merits" to the Fifth Circuit is to the Supreme Court "substantial grounds for relief." *See Ellis v. Collins,* 788 F.Supp. 317, 321 (S.D.Tex.1992) (Hittner, J.) (equating "substantial case" standard with "substantial grounds" standard expressed in *Barefoot), aff'd,* 956 F.2d 76 (5th Cir.), *cert. denied,* 503 U.S. 915, 112 S.Ct. 1285, 117 L.Ed.2d 510 (1992). Evidently, the "substantial case" language existed in the context of garden variety stays long before *Barefoot* came down, *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. Unit A 1981), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), but was never modified to clearly embrace the *Barefoot* standard in the context of death penalty habeas cases. *See Buxton,* 925 F.2d at 819 (using "substantial case" language post-*Barefoot*). However, there is no question that in the latter context, the Court of Appeals and the Supreme Court are using different wording for the same standard.

This court prefers to use the term "substantial grounds."

alleged, the judge finds that the failure of the petitioner constituted an abuse of the writ.

There is no question that the present claim represents Lackey's second federal habeas petition. As the State has met its burden of pleading abuse of the writ, the burden is on Lackey to show that his present claim is otherwise excused. *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

█ Before examining whether Lackey has met his burden, it should be observed at the outset that the use of the word "may" in Rule 9(b) is somewhat deceptive. The Supreme Court has stated that the true interpretation of the Rule is that federal courts should entertain successive petitions only in rare instances. *Kuhlmann v. Wilson,* 477 U.S. 436, 451, 106 S.Ct. 2616, 2625–26, 91 L.Ed.2d 364 (1986). As the subsequent discussion will show, the courts have limited discretion in identifying those rare instances.

A. Special Standard for Review

Lackey concedes that were this court to dismiss his petition as impermissibly successive or abusive, there would be no grounds for a stay. However, Lackey also argues that when considering a motion for stay, the court is not first required to settle the issue of "abuse of the writ." Rather, the court need only decide whether this issue, like all others in a motion for stay, is debatable among jurists of reason.

█ This court finds no decision which explicitly addresses this issue in a comprehensive way. There is no question that where a court dismisses a writ as abusive, consideration of a motion for stay is unnecessary. *Delo v. Stokes,* 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) ("There are no "substantial grounds" present in this case, because respondent's fourth federal habeas petition clearly constitutes an abuse of the writ."). However, most courts adjudicating a motion to stay will simply note that the petition is abusive and deny the motion, with no discussion of whether this determination is debatable. *Drew v. Collins,* 5 F.3d 93 (5th Cir.1993) (denying motion for stay on "abuse of writ" grounds without noting whether determination was debatable), *cert. denied,* — U.S. —, 114 S.Ct. 1207, 127 L.Ed.2d 555 (1994); *Prejean v. Smith,* 889 F.2d 1391 (5th Cir.1989) (same), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1836, 108 L.Ed.2d 964 (1990). The same is true for most courts considering, and granting motions to vacate. *See Woodard v. Hutchins,* 464 U.S. 377, 104 S.Ct. 752, 78 L.Ed.2d 541 (1984) (discussing abusiveness question without regard to whether determination was debatable among jurists of reason and granting motion to vacate); *Romero v. Collins,* 961 F.2d 1181 (5th Cir.1992) (same). *See also Clanton v. Muncy,* 845 F.2d 1238 (4th Cir.) (analyzing only nonabusive claims for "substantial grounds" in petition containing both abusive and nonabusive claims), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). These lines of authority at least suggest that "abuse of the writ" is a threshold issue that will preclude the finding of "substantial grounds" rather than being itself a part of the "substantial grounds" analysis.

Further, *Barefoot* itself suggests that "abuse of the writ" is an independent determination. 463 U.S. at 895, 103 S.Ct. at 3395 ("Even where it cannot be concluded that a petition should be dismissed under Rule 9(b), it would be proper for the district court to expedite consideration of the petition. The granting of a stay should reflect the presence of substantial grounds upon which relief might be granted."). *See also* James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure, § 13.2d (2d ed. 1994) [hereinafter Liebman & Hertz] (noting that under *Barefoot,* stay is required for successive petition where "1) Rule 9(b) ... does not compel dismissal ... and 2) the petition "reflect[s] the presence of substantial grounds upon which relief might be granted.").

For these reasons, as noted in the introduction to this opinion, this court was prepared to decide the issue of abuse of the writ as a threshold matter, without consideration of whether determination of this issue was debatable among jurists of reason. However, Petitioner points to one Fifth Circuit decision which clearly takes the different approach: in the context of a motion for stay,

"abuse of the writ" is simply one other issue which must be viewed through the prism of "substantial grounds." *James v. Cain,* 50 F.3d 1327, 1335 (5th Cir.1995) ("[W]e do not think that the question of whether cause exists for James's failure to raise his defective jury instruction in his first habeas petition is debatable among jurists of reason. . . ."). *See also Kennedy v. Singletary,* 967 F.2d 1482 (11th Cir.1992) (noting, in conclusion to denial of motion for stay and certificate of probable cause on basis of impermissible successive claim, "[w]e do not believe that this determination is debatable among jurists of reason."); *Mitchell v. Kemp,* 827 F.2d 1433 (11th Cir.) ("All of [petitioner's] claims are barred by the abuse/successive writ doctrine. Because reasonable jurists would not debate this result ... we likewise DENY Mitchell's emergency motion for stay of execution."), *cert. denied,* 483 U.S. 1050, 108 S.Ct. 14, 97 L.Ed.2d 812 (1987).

In light of *James v. Cain,* this court concludes that it need not resolve the "abuse of the writ" issue as a threshold matter. Rather, the relevant decision is whether it is "debatable among jurist of reason" that the present Petition is impermissibly abusive or successive.

## B. SUCCESSIVE OR ABUSIVE PETITIONS

Two types of petitions are subject to dismissal under the abuse of the writ doctrine. LIEBAN & HERTZ, § 28.1 at 987 n. 9. The first type raises grounds which have previously been adjudicated on the merits. Such petitions are frequently referred to as "successive." The second type contains new grounds for relief. These are called abusive petitions.

### (1) Successive Petitions

Certainly, the abuse of the writ doctrine is implicated here as the instant claim represents Lackey's second federal habeas petition. His Petition is either potentially successive or abusive, as defined above.

Respondent argues that Lackey's present Petition is successive. Lackey's brief to the Fifth Circuit in his first federal habeas appeal raised a claim that is similar to the argument he now presents. The question this court must then decide is whether the present Petition presents a ground for relief sufficiently similar to his previous Petition so as to constitute a successive petition. Again, this issue will be viewed through the prism of "debatable among jurists of reason."

### (2) Similarity of Ground

Lackey argues that unless the ground for relief asserted in his first petition is "identical" to that asserted in his present Petition, classification of his claim as "successive" is inappropriate. Although the Supreme Court has, at times, utilized the word "identical" in analyzing this issue, *Sawyer v. Whitley,* — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); *Kuhlmann v. Wilson,* 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986), it has done so in a shorthand manner to describe prior precedents. Exact identity of "ground" between the early and subsequent petition does not seem to be required. *Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 1077–78, 10 L.Ed.2d 148 (1963).

As will often be the case, an early petition will raise the same claim, in broad terms, as the subsequent claim, but the later claim will then merely add new legal or factual bases of support. The better view seems to be that these new bases are not to mistaken for new *grounds* for the purpose of avoiding classification as a successive petition. Said the Supreme Court:

> By "ground," we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against [a petitioner] is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on an alleged psychological coercion does not raise a different "ground" that does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, or be couched in

different language, or vary in immaterial respects.

*Id.* at 16, 83 S.Ct. at 1077 (citations omitted).

Summarizing the development of the rule announced in *Sanders,* the Ninth Circuit has noted:

> [D]espite the similarity or differences in the factual context of the claim, a ground is successive if the basic thrust or "gravamen" of the claim is the same, regardless of whether the claim is supported by new and different legal arguments. Thus, *whether a particular "new" issue is merely a "new legal argument rather than a new legal claim" will depend on whether the new issue is itself a ground for relief, as opposed to being merely a supporting argument or predicate step to a larger, basic claim.*

*Molina v. Rison,* 886 F.2d 1124, 1129 (1989). *See also* LIEBMAN & HERTZ § 28.4d at 935 n. 18 ("The analysis for whether bases of relief asserted in successive petitions are the same or different takes place at a relatively high level of generality, i.e. at the level of the 'claim' or 'ground' for relief and not at the more specific level of the particular legal or factual argument used to support the claim or ground."). It is also true, as the Ninth Circuit noted in *Molina,* that the rule is more easily stated than applied. 886 F.2d at 1128. The instant case is an excellent example of how difficult the rule can be to apply.

Fairly taken, the relevant "ground" for relief in Lackey's original petition was this: Execution after such a long time on death row constitutes cruel and unusual punishment.[4] This ground was supported by the various factual and legal arguments. While Lackey's Petition was unartfully worded and general in its terms, the following points were debatably raised in support of the general ground for relief: 1) execution was disproportionate to the offense; 2) the imposition of the death penalty in this instance would result in the needless imposition of pain and suffering; 3) execution did not contribute to the goal of punishment; and 4) that petitioner had behaved well in prison.[5]

At face value, the instant Petition presents the following claim for relief:

> [B]ecause Clarence Lackey has been forced to endure nearly two decades on Texas' death row—the vast majority of that delay directly attributable to the State of Texas, rather than to Mr. Lackey's actions—it would be cruel and unusual punishment to permit the state to execute him.

Pet. at 2. Lackey argues that the instant claim is "analytically distinct" from that

4. The entirety of Lackey's argument to the Fifth Circuit on this first federal habeas trip was that:

> ....
>
> XI. THE EXECUTION OF APPELLANT AFTER SIXTEEN (16) YEARS ON DEATH ROW IS CRUEL AND UNUSUAL PUNISHMENT
>
> Mr. Lackey has now been on death row since 1983. There is no evidence of misbehavior by him in custody. The trial record at the punishment phase shows that alcoholism treatment is available to Texas prisoners. Why kill him now?
>
> Appellant asks this court to consider whether the application of the death penalty to a class of offenders who have long had terms on death row, such as Mr. Lackey, violates the Eighth Amendment because it "makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering" because of the passage of time, the addition of the death penalty to lengthy confinement on death row is "grossly out of proportion to an isolated act" committed by a relatively young man. *See Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).

5. Petitioner attempts to characterize his prior petition as raising only a very narrow ground of relief: execution of the petitioner would constitute cruel and unusual punishment because a death sentence is a disproportionate punishment for a crime committed at a young age for one who has behaved well in the meantime.

However, Lackey's own characterization of the prior claim is not controlling. The prior petition speaks for itself. The petition certainly mentions proportionality, but also raises other arguments. Some of these arguments are suspiciously similar those presented here. For instance, the petition speaks in part of " 'the imposition of needless pain and suffering' because of the passage of time...."

Nor does the authority cited in the first petition settle the question of what type of claim was raised. This court agrees that *Coker* and *Thompson* are proportionality cases. But *Coker* is also frequently cited, for example by Petitioner in the instant petition, for its discussion of evolving standards of decency.

made in his earlier Petition. But whether the claims can be distinguished, however, is not the issue.[6] What remains is to distill the instant claim to its essence, and separate the basic ground of the Petition from the support advanced for that ground.

Such "distillation" is arguably provided by the Memorandum Respecting the Denial of Certiorari, — U.S. —, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995), issued by Justice Stevens respecting the instant petition. The analytical framework that Justice Stevens uses is instructive, as well as his categorization of the main basis for relief and supporting arguments. For instance, Justice Stevens begins his Memorandum by phrasing the overall question Lackey presented thus: "whether executing a prisoner who has already spent some 17 years on death row violates the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.* This phraseology is virtually identical to that expressed by Lackey in his first habeas petition.

Debatably, that which is truly "new" in Lackey's present claim is the added emphasis on "who is to blame" for the bulk of the time that he has spent on death row. Justice Stevens's Memorandum appropriately treats this issue, five paragraphs later, as a side issue:

> Closely related to the basic question presented by the petitioner is a question concerning the portion of the 17 year delay that should be considered in the analysis.

*Lackey v. Texas,* — U.S. —, 115 S.Ct. 1421, 131 L.Ed.2d 304. While "who is responsible" for the time Lackey has spent on death row is arguably only a support or predicate step to the ultimate conclusion that affords relief, the issue of substantial similarity is certainly one which is debatable among jurists of reason. This is especially true in light of the requirement that any doubt as to whether the two grounds are different or the same "should be resolved in favor of the applicant." *Sanders,* 373 U.S. at 16, 83 S.Ct. at 1077. Under the circumstances, this court concludes that Petitioner's "ground" for relief asserted here cannot, with necessary certainty, be equated with the same ground asserted in his earlier petition.

(3) Was Earlier Claim Decided "on the Merits"

The second requirement of a "successive" petition is that the earlier claim is to have been resolved "on the merits." *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078. The Fifth Circuit resolved the "lengthy death row stay" portion of Lackey's first habeas petition by stating:

> . . . . .
>
> IV. Execution After Long Imprisonment
>
> Finally, Appellant notes that he has been on death row since 1983 and argues that executing him after his lengthy incarceration "makes no measurable contribution to accepted goals of punishment." He also argues that the addition of the death penalty to his lengthy incarceration is "grossly out of proportion to his isolated act." We will not address the merits of these arguments for two reasons. First, Appellant raises these arguments for the first time on appeal. *See Alexander [v. McCotter],* 775 F.2d [595, at] 603 [ (5th Cir.1985) ]. Second, granting Lackey the relief he seeks would require us to create a new rule. *See Teague,* 489 U.S. at 311, 109 S.Ct. at 1076.

*Lackey v. Scott,* 28 F.3d 486, 492 (5th Cir. 1994).

Does this discussion represent a holding "on the merits?" While the Fifth Circuit itself noted that it would not address the merits of the claim, it did so, at least in part, on the basis that granting Lackey the relief he sought would invite the retroactive application of a new rule of law as barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). This holding operates as a decision "on the merits" for the purpose of determining the "successive" status of a second habeas application. *Williams v. Whitley,* 994 F.2d 226, 234 n. 3 (5th Cir.),

6. This is not to imply, in any way, that Lackey's present attorneys have deliberately phrased the present petition to avoid "successive" classification. Indeed, the court is impressed with the sincerity, diligence and candor of Lackey's counsel.

*cert. denied,* — U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993). This court does not believe that this conclusion is debatable.

(4) Cause and Prejudice Standard for Successive Claims

In the past, the need to distinguish between potentially successive and abusive claims was important because different "excuse" doctrines were applicable to each type of claim. Until recently, only otherwise abusive petitions could be excused by a showing of either "cause and prejudice" or "miscarriage of justice." *See McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470–71 (adopting "cause and prejudice" standard for abusive writs). Otherwise successive petitions, conversely, could be excused only by a showing that the "ends of justice" would be served by reconsideration of the grounds raised. *Id.* at 486, 111 S.Ct. at 1466. The following chart depicts this past state of the law:

| BAR TO SECOND CLAIM | EXCEPTION 1 | EXCEPTION 2 |
| --- | --- | --- |
| Successive (old) | | Ends of justice |
| Abusive (new) | Cause and Prejudice | Miscarriage of Justice |

Since a different excuse standard governed potentially successive and abusive petitions, courts working under these standards identified habeas petitions as either potentially abusive or successive as the necessary prelude to an analysis of the applicable excuse exception.

[■] But the underpinnings of this method of analysis have changed. First, "miscarriage of justice" rather than "ends of justice" became the operable excuse doctrine for otherwise successive petitions. *McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470–71; *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).[7] Then in *Sawyer v. Whitley,* — U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the Supreme Court, without explanation, made the "cause and prejudice" test applicable to successive petitions. *See Williams,* 994 F.2d at 234 n. 3 (1993) (noting, in the wake of confusion as to whether Supreme Court in *Sawyer* intended to extend the cause and prejudice standard to arena of successive petitions, "we have no doubts" as to *Sawyer* holding). In decisions following *Sawyer* and *Kuhlmann,* courts have recognized that the excuse doctrines available for potentially successive and abusive petitions are the same. The following chart depicts the current state of the law under the abuse of the writ doctrine:

| BAR TO SECOND CLAIM | EXCEPTION 1 | EXCEPTION 2 |
| --- | --- | --- |
| Successive (old) | Cause and Prejudice | Miscarriage of Justice |
| Abusive (new) | Cause and Prejudice | Miscarriage of Justice |

Under this view, regardless of whether a second habeas petition is characterized as successive or abusive, courts will reach the merits of the claim on a showing of either "cause and prejudice" or "miscarriage of justice."

[■] Although the "cause and prejudice" standard is now utilized when considering both successive and abusive petitions, it is not entirely clear that the standard carries the same meaning in each context.[8] The Fifth Circuit has not yet ruled on this point. The Ninth Circuit has, however. In *Campbell v. Blodgett,* 997 F.2d 512, 524 (9th Cir. 1993), the Court of Appeals wrote:

> To justify review of a successive claim, we must construe "cause" to also mean cause for bringing a petition that fails to present a new ground for relief. *In other words, a petitioner must show cause for seeking review of the same claim twice—such as the discovery of new facts, or an interven-*

7. The Supreme Court has in fact equated the terms "ends of justice" and "miscarriage of justice." *Sawyer,* — U.S. at ——, 112 S.Ct. at 2518.

8. Assuming that the Petitioner is able to establish "cause," this Court has no doubt that the "prejudice" prong of the doctrine is similarly satisfied.

*ing change in the law, that warrants reexamination of the same ground for relief raised in an earlier petition.*

*Id.* at 524 (emphasis added). This definition of "cause" differs from the definition stated for procedural default and abusive writ cases. There, "cause" is a justifiable reason for failing to raise the new claim earlier, such as actual ineffective assistance of counsel, or some other objective factor external to the defense which impeded counsel's efforts. *McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470–71.

It does seem appropriate that the definition of "cause" should differ for successive writs as compared to abusive writs, or else there would be little reason to distinguish between the two, since the application of each depends on their excuse doctrines. Certainly, it would seem that the "cause and prejudice" standard should not be applied to potentially successive claims in the same way it is applied to potentially abusive claims.[9] One highly respected authority predicts the opposite result, however, and for good reason. LIEBMAN & HERTZ, § 28.4f at 948. To define "cause" differently for successive and abusive claims, no matter how logical or necessary the result appears, creates its own set of problems. It complicates an already complicated area of the law. It eschews uniformity in an area of the law where uniformity is needed. It promotes criticism *a la Alice in Wonderland* of standards where the same words mean different things.

Under the circumstances, it can certainly be debated among jurists of reason whether "cause" means the same thing for both successive and abusive petitions. This fact is far from academic. Here, Lackey seeks to demonstrate "cause" via the "novelty" doctrine expressed in *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).[10] The novelty doctrine operates to excuse an otherwise abusive petition that presents truly "novel" grounds for relief which were not knowable by competent counsel at the time of the original appeal. In the context of a successive petition, however, "novelty" can establish "cause" only if the definition of "cause" is the same as it is in the context of an otherwise *abusive* petition. Stated another way, if Professors Liebman and Hertz are correct, and the same "cause" standard controls abusive and successive writs, Lackey's claim of novelty provides cause to excuse his otherwise successive petition. But if the Ninth Circuit is correct, and a different "cause" standard applies to successive petitions than abusive petitions, Lackey's claim of novelty is irrelevant, and his petition is not excused.[11]

(5) Miscarriage of Justice

Even where the cause and prejudice standard is not met, courts will review the merits of an otherwise successive habeas petition where dismissal would constitute a "miscarriage of justice." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2518; *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627. As traditionally construed, the "miscarriage of justice" exception embraces a very narrow class of petitioner. It is limited to petitioners with "colorable claims of actual innocence," *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627, or at least claims of "actual innocence of the death penalty." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2519. The latter term has been taken to mean a constitutional error at sen-

9. The Ninth Circuit approach only seems to recognize the obvious. The "cause" standard applicable to potentially abusive writ cases cannot logically be applied to successive writs. It makes little sense to ask the successive petitioner to provide a justifiable reason for not raising the present claim earlier, when a successive petitioner, by definition, did raise the claim earlier.

10. There is strong authority for the proposition that Lackey's argument is novel. In his Memorandum Respecting the Denial of Certiorari in *Lackey's* second state habeas, Justice Stevens, joined by Justice Breyer, referred to Petitioner's substantive argument in terms of its "importance and novelty." —— U.S. ——, 115 S.Ct. 1421, 131 L.Ed.2d 304. Under the circumstances, it is to engage in understatement to say that the novelty of Lackey's claim is debatable among jurists of reason.

11. Again, the "cause" standard advanced by the Ninth Circuit offers excuse for an otherwise successive petition only where there was an intervening change in the law or facts that justifies reconsideration of the issue previously raised in the earlier habeas petition. Whether a claim is "novel" is not relevant under this standard.

tencing which caused the jury to find aggravating factors which led to the imposition of a death sentence. *Id.* at ——, 112 S.Ct. at 2523.

The difficulty here is that the alleged constitutional error occurred outside the context of determination of guilt and sentencing. Petitioner's claim thus does not fall within traditional formulations of the "miscarriage of justice" exception. There are few theoretical underpinnings that would guide the advancement of "miscarriage of justice" into the arena of novel claims, such as the one advanced here. For this reason alone, this court concludes that these issues are debatable among jurists of reason.[12]

## II. *TEAGUE V. LANE* AND THE LAW OF THE CASE

The bar on retroactive application of new constitutional rules expressed in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and the "law of the case" doctrine are both further hurdles that Petitioner must overcome before a court may reach the merits of his claim. Here again, the question is whether the resolution of these issues is debatable among jurists of reason.

As to the *Teague* bar, this court believes there is at least arguable merit to Petitioner's contention that *Teague* simply should not apply to his claim. The argument is simple. Considerations of comity and finality underlie the *Teague* bar, which honors the good faith efforts of state courts to properly adjudicate constitutional claims on direct appeal under then-existing law. *Teague,* 489 U.S. at 308–10, 109 S.Ct. at 1074–75. But here, Petitioner's claim was not cognizable, or at the least, could not be raised, on direct appeal. Some commentators have argued that *Teague* fails to account for precisely such claims. LIEBMAN & HERTZ, § 25.4, at 748–749 ( [C]ertain kinds of claims ... do not arise in theory until after the direct appeal is decided; and other kinds of claims ... cannot be raised as a practical matter until after direct appeal."). To some extent, it is precisely the length of the direct appeal process that supports Lackey's claim. For these reasons, the *Teague* issue is certainly subject to debate among jurists of reason.

Similarly, "debatable issues" exist with respect to the application of the "law of the case" doctrine to this claim. This discretionary doctrine "generally operates to preclude reexamination of issues decided on ap-

12. Notwithstanding this conclusion, this court's preliminary view is that the error alleged here simply does not rise to the level of miscarriage of justice. The doctrine is meant to identify those claims in which the alleged constitutional violation is so severe that the importance of its (re)consideration overrides concerns of finality. That innocence of guilt and improper introduction of aggravating factors in sentencing are the only factors which define the exception is a telling reflection of the degree of severity that must be established. It is clear that mere constitutional error alone is insufficient to meet the exception, unless tied to a claim of actual innocence or innocence of the death penalty. The State argues, and the court agrees, that Lackey is essentially no different than any other petitioner who has had his constitutional rights violated. Deprivation of a constitutional right alone cannot lead to automatic entitlement to reconsideration of a claim raised and decided on a previous habeas petition. If it did, finality on collateral review would be nonexistent. Lackey's argument is deficient in this respect in that it provides no limiting measure.

Lackey also seeks to place himself within the miscarriage of justice exception by analogizing his claim to the class of claims exempted from the *Teague* retroactivity bar. Since the concerns that underlie *Teague* and the abuse of the writ doctrine are the same, the argument goes, so should the exceptions to each doctrine be the same. This court is not convinced by the argument that the exceptions to *Teague* and the miscarriage justice exception are or should be analogous. But assuming that they are, this court rejects the notion that Lackey is "ineligible" for the death penalty in the same manner as those petitioners held exempt from *Teague* under *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). While some petitioners may achieve a status or class that renders them ineligible for the death penalty, the "disqualifying" feature is either innate in the petitioner himself, *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (insanity), or results from the petitioner not being within a death eligible class from the outset, *e.g. Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (petitioner convicted of rape not eligible for death penalty). The State argues, and this court agrees, that Lackey is like any other death row inmate who at some point had his constitutional rights violated. This fact does not give him a "status" in the same sense as those petitioners encompassed by *Teague's* first exception.

peal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir. Unit A 1981). However, for the reasons discussed under the "abuse of the writ" doctrine, it is debatable whether the issue presented here is the same issue that was decided by the Fifth Circuit on Lackey's first habeas trip.

III. UNDERLYING MERITS

Based on the Memorandum Respecting the Denial of Certiorari in the previous Lackey appeal by Justice Stevens, there is no question that jurists of reason would find debatable the substantive issue raised here.

## *CONCLUSION*

This court is satisfied that the Petitioner has presented substantial grounds on which relief might be granted. Further, this court believes that the "balance of equities" favor the Petitioner. There is no question that the Petitioner is threatened with irreparable injury were this claim denied. This showing, coupled with the "substantial case" Petitioner has presented, outweighs any interest the State has in proceeding to execution in the coming week. The complicated nature of the issues presented in this Petition warrant a more reasoned deliberation than the available time frame permits. This Court therefore concludes that a stay is appropriate.

Accordingly, it is ORDERED that Petitioner's Motion for Stay of Execution is GRANTED.

It is also ORDERED that hearings on this matter will proceed on June 19, 1995.